## KATHLEEN E. GRECO ET AL. *v.* UNITED TECHNOLOGIES CORPORATION ET AL.
### (SC 17231)

Sullivan, C. J., and Katz, Palmer, Vertefeuille and Zarella, Js.

338

Argued January 13, 2005—officially released February 28, 2006

*Richard L. Gross*, with whom, on the brief, was *Matthew Shafner*, for the appellants (named plaintiff et al.).

*Victoria Woodin Chavey*, with whom was *Albert Zakarian*, for the appellees (defendants).

*Opinion*

PALMER, J. In this wrongful death action, the plaintiffs,[1] surviving spouses and representatives of the

---

[1] The plaintiffs are Kathleen E. Greco, executor of the estate of John A. Greco; Carol L. Shea, executor of the estate of John J. Shea, Jr.; Anna Cavallo, administrator of the estate of Leone Cavallo; Rosalyn Burns Spiegelman, executor of the estate of Irwin M. Burns; Barbara E. Burns, executor of the estate of Jay R. Burns; Loretta J. Haberern, administrator of the estate of John R. Haberern; Sharon L. Hachey, executor of the estate of Michael J. Hachey; Shelley L. Stears, executor of the estate of Emma Hamilton; Margaret M. Harrison, executor of the estate of Herbert H. Harrison; Yvette A. LaCasse, executor of the estate of Gerard A. LaCasse; Mary E. Long, executor of the estate of James M. Long; Jean Miller-Smith, executor of the estate of David W. Miller; Fernande G. Ouellette, executor of the estate of Joseph E. Ouellette; Joanne Page, administrator of the estate of Jules E. Page; Alfred Pandolfo, executor of the estate of Anthony R. Pandolfo; Tecla C. Pandolfo, surviving spouse of the decedent Anthony R. Pandolfo; Katherine E. Perruzzi, executor of the estate of Andrew S. Perruzzi; Elizabeth Petrini Autorino, administrator of the estate of Eugene Petrini; Yolanda Romanini, executor of the estate of Ernest Romanini; Lorraine E. Roussel, executor of the estate of Reno G.J. Roussel; Donald E. Rubb, executor of the estate of Evert E. Rubb; Ruth Patterson, surviving spouse of the decedent Evert E. Rubb; Judith E. Siegmund, executor of the estate of Ronald Siegmund; Minnie J. Silvestri, executor of the estate of Louis J. Silvestri; Gerard W. Tarbox, executor of the estate of Frederick Tarbox; Catherine G. Tarbox, surviving spouse of the decedent Frederick Tarbox; Marc Tougas, administrator of the estate of Roland Tougas; Leotine B. Tougas, surviving spouse of the decedent Roland Tougas; Mary Zitani, administrator of the estate of Christino Zitani; Palma R. Schmidt, executor of the estate of Joseph Cannata; Margaret

estates of sixty-one decedents, appeal from the judgment of the trial court rendered in favor of the defendants, United Technologies Corporation and several of its corporate officers,[2] on the ground that the plaintiffs'

Bacha, administrator of the estate of Edward P. Cochran; Priscilla H. Geer, executor of the estate of Erskine H. Geer; Debra L. Freitag, administrator of the estate of Daniel C. Generous; Priscilla C. Hoey, executor of the estate of Matthew T. Hoey; Diane Morin, administrator of the estate of Anthony J. Malone; Mary Malone, surviving spouse of the decedent Anthony J. Malone; Suzanne Sheidy, executor of the estate of Virginia H. Wallant; Christine Bauer, administrator of the estate of Frederick Bauer; Madeline V. Brunelli, executor of the estate of Paul P. Brunelli; Linda Kolpak, executor of the estate of Ronald F. Kolpak II; Katherine B. Lickwar, executor of the estate of John R. Lickwar; Shelley L. Atcherson, administrator of the estate of Charles E. Atcherson; Claire T. Cortright, executor of the estate of Richard R. Cortright; John V. D'Addio, executor of the estate of Stephen A. D'Addio; Dorothy Hodas, executor of the estate of John Hodas; Donald Kearney, administrator of the estate of Helen Kearney; Jean A. Mann, executor of the estate of Earl R. Mann; Nora E. Malinowski, administrator of the estate of Albert P. Malinowski; Maureen A. Girard, administrator of the estate of James J. McEvoy; Rita T. McEvoy, surviving spouse of the decedent James J. McEvoy; D. LaVerne McKenzie, administrator of the estate of Raymond E. McKenzie; Joan Morico, administrator of the estate of William R. Morico; Georgette Nicholas, administrator of the estate of Raymond Nicholas; Jean Munson, executor of the estate of John O'Connell; Dorothy H. Pendred, executor of the estate of Richard E. Pendred; Robert W. Stacy, administrator of the estate of Albert J. Stacy; Maureen T. Shiner, executor of the estate of John E. Tennis; Gail Vendetto Wysocki, executor of the estate of Harry E. Vendetto, Jr.; Susan M. Welker and Eric Welker, coexecutors of the estate of Carl M. Wickstrand, Jr.; Alda DeBortoli, executor of the estate of Mario A. DeBortoli; Monica W. Dubois, executor of the estate of Alex F. Dubois; Bruce Joslin, executor of the estates of Scott S. Joslin and Ruth Joslin, the spouse of the decedent Scott S. Joslin; William M. Nill, executor of the estate of Elizabeth M. Nill; Helen M. Pascoe, executor of the estate of Carlton E. Pascoe; Peter A. Petruzzi, executor of the estate of Jennie M. Petruzzi; Barbara Moscovics, administrator of the estate of Kenneth J. Moscovics; and Patsy A. Rice, executor of the estate of James R. Rice, Jr. Roma J. Spada, Gerald W. Curtis, Gary O. Hand, Russell A. Bressette, Joseph G. Cyr, Homerine Gendreau, Joseph P. Levesque, Richard M. Appelle, Thomas D. DiPietro and Paula Sparks also are plaintiffs. They are not parties to this appeal, however. See footnote 11 of this opinion. Hereinafter, all references to the plaintiffs are to the plaintiffs that are parties to this appeal.

[2] The officers are Harry J. Gray and Robert F. Daniell, former chief operating officers of United Technologies Corporation, and Louis R. Chenevert, former president of the Pratt and Whitney division of United Technologies Corporation.

action is time barred under General Statutes § 52-555.[3] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. The plaintiffs, most of whom represent the estates of deceased former employees of the Pratt and Whitney division of United Technologies Corporation (Pratt and Whitney),[4] jointly brought this wrongful death action,[5] alleging that the defendants intentionally had exposed the decedents to toxic chemicals or radiation or both by polluting the air, soil, surface water and groundwater surrounding various Pratt and Whitney facilities in the state. The plaintiffs also alleged that these pollutants subsequently entered the air and water of the decedents' workplace. The plaintiffs further alleged that the defendants' conduct caused the decedents to inhale, ingest or absorb through their skin various toxic agents present in the workplace, and that such exposure continued outside the workplace when the decedents inadvertently carried the hazardous substances into their homes and automobiles on their clothing and persons. The plaintiffs claimed that, as a direct result of this exposure, the decedents suffered variously from systemic chemical poisoning, cancer and malig-

[3] General Statutes § 52-555 provides in relevant part: "(a) In any action surviving to or brought by an executor or administrator for injuries resulting in death, whether instantaneous or otherwise, such executor or administrator may recover from the party legally at fault for such injuries just damages together with the cost of reasonably necessary medical, hospital and nursing services, and including funeral expenses, provided no action shall be brought to recover such damages and disbursements but within two years from the date of death, and except that no such action may be brought more than five years from the date of the act or omission complained of. . . ."

[4] We hereinafter refer to these deceased former Pratt and Whitney employees as the decedents.

[5] The plaintiffs also asserted loss of consortium claims. Because the statute of limitations applicable to loss of consortium claims, namely, General Statutes § 52-555c, incorporates the limitation period applicable to wrongful death actions, we hereinafter refer to the plaintiffs' claims generally as wrongful death claims for ease of reference.

nant brain tumors, and that those conditions eventually had caused the decedents' deaths. In addition to compensatory damages, the plaintiffs sought punitive damages predicated on the defendants' alleged "[wilful] disregard of federal and state safety and environmental laws and regulations and extremely reckless disregard of the [decedents' lives], health and safety . . . ."[6]

The defendants filed a motion to strike the plaintiffs' complaint on the ground that the action was time barred under § 52-555. See footnote 3 of this opinion. The defendants claimed that the action was untimely because it was brought on behalf of decedents who either had died more than two years before the action was filed or had ceased to remain employed with Pratt and Whitney more than five years before the action was filed.[7] In response, the plaintiffs claimed that the applicable statute of limitations is not § 52-555 but, rather, General Statutes § 52-577c (b),[8] which provides in relevant part that an action to recover damages for personal injury "caused by exposure to a hazardous

[6] The plaintiffs further alleged that, although the defendants were aware of the serious health hazards associated with the released toxins, they deliberately concealed the information from their employees, thereby preventing the decedents from taking appropriate measures to mitigate the harm or to avoid further exposure. The plaintiffs also alleged that the defendants failed to provide the decedents with a safe work environment by denying or refusing to provide proper exhaust ventilation, protective clothing and equipment, a safer manufacturing process, and education and training concerning the toxic agents present in the workplace.

[7] The defendants also raised a claim of misjoinder in support of their motion to strike. The trial court denied the defendants' motion insofar as it was predicated on the misjoinder claim, and the defendants have not appealed from that ruling.

[8] General Statutes § 52-577c (b) provides: "Notwithstanding the provisions of sections 52-577 and 52-577a, no action to recover damages for personal injury or property damage caused by exposure to a hazardous chemical substance or mixture or hazardous pollutant released into the environment shall be brought but within two years from the date when the injury or damage complained of is discovered or in the exercise of reasonable care should have been discovered."

chemical substance or mixture or hazardous pollutant released into the environment" must be brought within two years of the date on which the injury was discovered or reasonably should have been discovered.[9] The plaintiffs further maintained that they were entitled to establish, as a factual matter, that their actions had been initiated within the limitation period prescribed by § 52-577c (b). Alternatively, the plaintiffs claimed that 42 U.S.C. § 9658,[10] a provision of the federal Com-

[9] We note that the plaintiffs never have claimed that they commenced their action within the limitations period prescribed by § 52-555. They claim, rather, that § 52-577c (b), and not § 52-555, is the applicable statute of limitations.

[10] Title 42 of the United States Code, § 9658, provides: "(a) State statutes of limitations for hazardous substance cases

"(1) Exception to State statutes

"In the case of any action brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility, if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.

"(2) State law generally applicable

"Except as provided in paragraph (1), the statute of limitations established under State law shall apply in all actions brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility.

"(3) Actions under section 9607

"Nothing in this section shall apply with respect to any cause of action brought under section 9607 of this title.

"(b) Definitions

"As used in this section—

"(1) Subchapter I terms

"The terms used in this section shall have the same meaning as when used in subchapter I of this chapter.

"(2) Applicable limitations period

"The term 'applicable limitations period' means the period specified in a statute of limitations during which a civil action referred to in subsection (a) (1) of this section may be brought.

"(3) Commencement date

prehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9601 et seq., preempted the statute of limitations contained in § 52-555. Section 9658 provides for a "federally required commencement date" for certain actions brought under state law for injuries caused by exposure to any hazardous substance, pollutant or contaminant that was "released into the environment from a facility . . . ." (Internal quotation marks omitted.) 42 U.S.C. § 9658 (a) (1) (2000). Under CERCLA, the "federally required commencement date" is defined as the date that the injured party knew or reasonably should have known that his or her injury had been caused by the hazardous substance, pollutant or contaminant. 42 U.S.C. § 9658 (b) (4) (A) (2000).

Thereafter, the trial court granted in part the defendants' motion to strike,[11] concluding that the plaintiffs' claims were time barred under § 52-555.[12] The trial court

"The term 'commencement date' means the date specified in a statute of limitations as the beginning of the applicable limitations period.

"(4) Federally required commencement date

"(A) In general

"Except as provided in subparagraph (B), the term 'federally required commencement date' means the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages referred to in subsection (a) (1) of this section were caused or contributed to by the hazardous substance or pollutant or contaminant concerned.

"(B) Special rules

"In the case of a minor or incompetent plaintiff, the term 'federally required commencement date' means the later of the date referred to in subparagraph (A) or the following:

"(i) In the case of a minor, the date on which the minor reaches the age of majority, as determined by State law, or has a legal representative appointed.

"(ii) In the case of an incompetent individual, the date on which such individual becomes competent or has had a legal representative appointed."

[11] The trial court denied the defendants' motion to strike with respect to ten surviving plaintiffs, each of whom has raised a claim of battery against the defendants. Those ten additional plaintiffs are not parties to this appeal. See footnote 1 of this opinion.

[12] We note that, ordinarily, "[a] claim that an action is barred by the lapse of the statute of limitations must be pleaded as a special defense, not raised by a motion to strike." *Forbes* v. *Ballaro*, 31 Conn. App. 235, 239, 624 A.2d

rejected the plaintiffs' claim that § 52-577c (b) is the applicable statute of limitations because the plaintiffs expressly alleged in their complaint that they brought their action pursuant to § 52-555 and did not mention or refer to § 52-577c, in accordance with the provisions of Practice Book § 10-3.[13] The trial court also rejected the plaintiffs' claim that 42 U.S.C. § 9658 preempted § 52-555. Specifically, the trial court concluded that, to the extent that the plaintiffs' claims were predicated on the release of contaminants within the workplace, those claims fell outside the scope of 42 U.S.C. § 9658 because CERCLA expressly excludes from its purview "any release [of hazardous substances, pollutants or contaminants] which results in exposure to persons solely within a workplace, with respect to a claim which such persons may assert against the employer of such persons . . . ."[14] 42 U.S.C. § 9601 (22)

389 (1993); see Practice Book § 10-50. This is because a motion to strike challenges only the legal sufficiency of the complaint and "might . . . deprive a plaintiff of an opportunity to plead matters in avoidance of the statute of limitations defense." *Forbes* v. *Ballaro*, supra, 239. An exception to this general rule exists, however, when "a statute gives a right of action which did not exist at common law, and fixes the time within which the right must be enforced, the time fixed is a limitation or condition attached to the right—it is a limitation of the liability itself as created, and not of the remedy alone." (Internal quotation marks omitted.) Id., 239–40. Because "§ 52-555 creates liability where none formerly existed [at common law]"; *Ecker* v. *West Hartford*, 205 Conn. 219, 233, 530 A.2d 1056 (1987); it is undisputed that the defendants properly raised the limitation period of § 52-555 in a motion to strike.

[13] Practice Book § 10-3 provides in relevant part: "(a) When any claim made in a complaint, cross complaint, special defense, or other pleading is grounded on a statute, the statute shall be specifically identified by its number. . . ."

[14] In support of its conclusion that the plaintiffs' action is barred by virtue of 42 U.S.C. § 9601 (22), the court also noted that the defendants' alleged release of contaminants in the decedents' workplace is at "the heart of [the plaintiffs'] wrongful death claim," and that workers' compensation claims had been filed against the defendants predicated on the decedents' workplace exposure. The trial court also observed that "[a]n examination of the overall purpose of CERCLA supports the view that the phrase '[release] into the environment from a facility' does not encompass contamination when, as [in the present case], the initial exposure occurred at the workplace."

(2000).[15] The trial court also concluded that, to the extent that the plaintiffs' CERCLA preemption claim was based on the alleged release of toxins from the person and clothing of the decedents into their homes and motor vehicles following their departure from the site of the original workplace contamination, that release did not constitute an actionable release "into the environment from a facility" for purposes of 42 U.S.C. § 9658 (a) (1), first, because motor vehicles and homes do not fall within the definition of "environment" under 42 U.S.C. § 9601 (8)[16] and, second, because the decedents' clothing is not a "facility" as that term is defined by 42 U.S.C. § 9601 (9).[17] Accordingly, the trial court granted in part the defendants' motion to strike and, thereafter, rendered partial judgment thereon for the defendants.[18] This appeal followed.[19]

---

[15] Title 42 of the United States Code, § 9601, provides in relevant part: "(22) The term 'release' means any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment . . . but excludes . . . any release which results in exposure to persons solely within a workplace, with respect to a claim which such persons may assert against the employer of such persons . . . ."

[16] Title 42 of the United States Code, § 9601, provides in relevant part: "(8) The term 'environment' means (A) the navigable waters, the waters of the contiguous zone, and the ocean waters of which the natural resources are under the exclusive management authority of the United States under the Magnuson-Stevens Fishery Conservation and Management Act [16 U.S.C. § 1801 et seq.], and (B) any other surface water, ground water, drinking water supply, land surface or subsurface strata, or ambient air within the United States or under the jurisdiction of the United States. . . ."

[17] Title 42 of the United States Code, § 9601, provides in relevant part: "(9) The term 'facility' means (A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft, or (B) any site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel. . . ."

[18] In accordance with Practice Book § 10-44, the trial court rendered judgment for the defendants after the plaintiffs failed to amend their complaint, following the court's ruling on the defendants' motion to strike.

[19] The plaintiffs appealed to the Appellate Court from the judgment of the trial court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

On appeal, the plaintiffs renew the claims that they raised in the trial court. We reject each of the plaintiffs' claims.

Before addressing the merits of those claims, we first set forth the applicable standard of review. "A motion to strike challenges the legal sufficiency of a pleading . . . and, consequently, requires no factual findings by the trial court. As a result, our review of the court's ruling is plenary. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . [I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . Thus, we assume the truth of both the specific factual allegations and any facts fairly provable thereunder. In doing so, moreover, we read the allegations broadly . . . rather than narrowly." (Citation omitted; internal quotation marks omitted.) *Craig* v. *Driscoll*, 262 Conn. 312, 321, 813 A.2d 1003 (2003).

Furthermore, each of the plaintiffs' claims raises an issue of statutory construction. "It is well settled that in construing statutes, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . [W]e seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply."[20] (Citation omitted; internal quotation marks omitted.) *Miller's*

[20] We note that, under General Statutes 1-2z, "[t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." Neither the plaintiffs nor the defendants, however, have raised a persuasive claim that the statutory provisions at issue in the present case are plain and unambiguous as applied to the facts of the case.

*Pond Co., LLC* v. *New London*, 273 Conn. 786, 800, 873 A.2d 965 (2005). Finally, we review de novo the trial court's construction of the relevant statutory provisions. See, e.g., *Semerzakis* v. *Commissioner of Social Services*, 274 Conn. 1, 11–12, 873 A.2d 911 (2005).

I

The plaintiffs first claim that the trial court improperly concluded that the applicable statute of limitations is § 52-555 rather than § 52-577c (b). They contend that, although wrongful death claims ordinarily are governed by § 52-555, their action is governed by § 52-577c (b) inasmuch as the allegations of the complaint fall squarely within the language of § 52-577c (b). We reject the plaintiffs' contention.

As the plaintiffs acknowledge, § 52-555 is the statute of limitations generally applicable to wrongful death claims. Because the plaintiffs' action is one for wrongful death, § 52-555 presumptively governs the plaintiffs' claims. The plaintiffs contend, nevertheless, that § 52-577c (b) is the governing statute of limitations because it applies to actions for damages "caused by exposure to a hazardous chemical substance or mixture or hazardous pollutant released into the environment"; General Statutes § 52-577c (b); and the plaintiffs have alleged such damages. By its express terms, however, General Statutes § 52-577c (b) is limited in scope to damages for "personal injury or property damage . . . ." The plaintiffs' action does not involve a claim for personal injury or property damage but, rather, for wrongful death, which, as we have explained, is governed by the statute of limitations contained in § 52-555.

Furthermore, General Statutes § 52-577c (b) provides that it is the applicable limitation period "[n]otwith-

standing the provisions of [General Statutes §] 52-577,"[21] the statute of limitations that pertains to tort actions generally, "and [General Statutes §] 52-577a,"[22] the statute of limitations that pertains to product liability claims. Thus, to the extent that § 52-577c (b) otherwise may be applicable under the present factual circumstances, that statutory provision expressly preempts §§ 52-577 and 52-577a but, notably, does not purport to preempt § 52-555. If the legislature had intended for § 52-577c (b) to preempt § 52-555, it easily could have done so by enumerating § 52-555, along with §§ 52-577 and 52-577a, as one of the statutes of limitation preempted by § 52-577c (b). See, e.g., *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 266 Conn. 108, 119, 830 A.2d 1121 (2003). The fact that it did not do so is strong evidence that the legislature did not intend for § 52-577c (b) to preempt § 52-555.

Our conclusion finds support in the nature and history of the limitation period of § 52-555. As we explained in *Ecker* v. *West Hartford*, 205 Conn. 219, 530 A.2d 1056 (1987), "no action for wrongful death existed at common law or exists today in Connecticut except as otherwise provided by the legislature." Id., 231. We noted that, because "§ 52-555 creates a liability where none formerly existed, the statute must be strictly construed and we are not at liberty to extend, modify or enlarge its scope through the mechanics of construction." Id., 233. We further concluded that "the [time] limitation contained within § 52-555 is a jurisdictional prerequisite which cannot be waived and which must be met in order to maintain an action under § 52-555."

---

[21] General Statutes § 52-577 provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."

[22] General Statutes § 52-577a provides in relevant part: "(a) No product liability claim . . . shall be brought but within three years from the date when the injury, death or property damage is first sustained or discovered or in the exercise of reasonable care should have been discovered . . . ."

Id. Thus, § 52-555 is "not to be treated as an ordinary statute of limitation[s] . . . ." Id., 232. Rather, it "is a limitation on the liability itself, and not of the remedy alone." Id. Accordingly, the right to bring a wrongful death claim pursuant to § 52-555 exists only during the statutorily prescribed time period, and expires thereafter. See id., 232–33. Because the limitation period of § 52-555 is jurisdictional in nature, the plaintiffs shoulder a heavy burden of establishing that § 52-555 is preempted by another statute of limitations. As we have explained, the evidence of legislative intent clearly is to the contrary.[23]

The plaintiffs nevertheless argue that it is "eminently reasonable" to infer that the legislature intended for the term "personal injury" to include wrongful death. Although the legislature reasonably *could* have equated personal injury and wrongful death for statute of limitations purposes, the language of the relevant statutory provisions belies the plaintiffs' claim. See, e.g., *Leo Fedus & Sons Construction Co.* v. *Zoning Board of Appeals*, 225 Conn. 432, 441–42, 623 A.2d 1007 (1993) ("Courts may not by construction supply omissions . . . or add exceptions merely because it appears that good reasons exist for adding them. . . . The intent of the legislature . . . is to be found not in what the legislature meant to say, but in the meaning of what it did say. . . . It is axiomatic that the court itself cannot rewrite a statute to accomplish a particular result. That is a function of the legislature." [Citations omitted; internal quotation marks omitted.]). Moreover, as we have explained, statutory wrongful death actions and common-law personal injury actions historically have been treated as separate and distinct actions. See, e.g., *Ladd*

---

[23] Furthermore, the legislative history of § 52-577c (b) does not suggest that that provision was intended to apply to wrongful death claims brought pursuant to § 52-555, in addition to claims for personal injury and property damage.

v. *Douglas Trucking Co.*, 203 Conn. 187, 191, 523 A.2d 1301 (1987). Finally, our review of other statutory provisions indicates that when the legislature wishes to treat personal injury and wrongful death actions in the same manner, the legislature has done so expressly. See, e.g., General Statutes § 52-114 ("[i]n any action to recover damages for negligently causing the *death* of a person, or for negligently causing *personal injury or property damage*, it shall be presumed that such person . . . was . . . in the exercise of reasonable care" unless contributory negligence is affirmatively pleaded [emphasis added]); General Statutes § 52-184c (a) ("[i]n any civil action to recover damages resulting from *personal injury* or *wrongful death* . . . in which it is alleged that such injury or death resulted from the negligence of a health care provider . . . the claimant shall have the burden of proving . . . a breach of the prevailing professional standard of care" [emphasis added]); General Statutes § 52-225d ("[p]ayment of damages in lump sum and periodic installments in *personal injury, wrongful death* and *property damage* actions" [emphasis added]); General Statutes § 52-251c (a) (restricting attorney contingency fees in *"personal injury, wrongful death and . . . property [damage]"* actions [emphasis added]); General Statutes § 52-584a (a) (no action against an architect, professional engineer or land surveyor "[1] to recover damages [A] for any deficiency in the design, planning, contract administration, supervision, observation of construction or construction of, or land surveying in connection with, an improvement to real property; [B] for injury to *property* . . . [or] [C] for injury to the *person* or for *wrongful death* arising out of any such deficiency . . . shall be brought . . . more than seven years after substantial completion of such improvement" [emphasis added]).[24]

---

[21] The plaintiffs maintain that *Ecker* v. *West Hartford*, supra, 205 Conn. 219, and *Sharp* v. *Wyatt, Inc.*, 230 Conn. 12, 644 A.2d 871 (1994), support their contention that § 52-577c (b) "is an explicit legislative alternative to § 52-555 reserved only for those situations when individuals are injured or

The plaintiffs also claim that our conclusion yields an absurd result because the decedents did not exhibit

die from exposure to hazardous substances." We disagree. In *Ecker*, we addressed the issue of whether the trial court had jurisdiction over a wrongful death action brought by the plaintiff, Patricia O. Ecker, administrator of the estate of her deceased husband, after the expiration of the limitation period of § 52-555. Id., 220, 226. In concluding that Ecker's action was time barred, we rejected her contention that § 52-555 was unconstitutional because it created a more restrictive class of wrongful death actions when compared to other statutes providing longer limitation periods for other types of death actions. Id., 241–45. In reaching that conclusion, we reviewed a number of statutes of limitation, including § 52-577c, that Ecker had identified as containing longer limitation periods for wrongful death actions than that of § 52-555. Id. We engaged in no analysis, however, as to whether § 52-577c applies to wrongful death actions; in essence, we accepted, arguendo, Ecker's representation regarding the alleged applicability of § 52-577c to wrongful death actions and, thereafter, rejected Ecker's constitutional claim. Consequently, *Ecker* does not stand for the proposition that § 52-577c applies to wrongful death claims.

The plaintiffs' reliance on *Sharp* v. *Wyatt, Inc.*, supra, 230 Conn. 12, also is misplaced. In *Sharp*, the decedents allegedly died from asphyxiation after descending into a storage vault containing petroleum products. Id., 13. The plaintiffs, representatives of the decedents' estates, brought a product liability action against the named defendant, Wyatt, Inc. (Wyatt), a wholesaler of petroleum products, among others, alleging, inter alia, that Wyatt had failed to warn of the hazards associated with the storage of the petroleum products. Id., 13–14. The trial court granted Wyatt's motion for summary judgment and rendered judgment thereon, from which the plaintiffs appealed to the Appellate Court. Id., 14. One of the issues raised on appeal to the Appellate Court was whether § 52-577a, the statute of limitations applicable to product liability claims, or § 52-577c (b), the statute of limitations applicable to personal injury actions predicated on exposure to hazardous chemicals or pollutants, governed the plaintiffs' claim. *Sharp* v. *Wyatt, Inc.*, 31 Conn. App. 824, 852, 627 A.2d 1347 (1993). The Appellate Court concluded that § 52-577c (b) is applicable only when there has been an exposure within the meaning of the statute; see id., 854; and that a factual question existed with respect to whether the decedents had been exposed to petroleum. Id., 854–55. Accordingly, the Appellate Court reversed the trial court's judgment and remanded the case to that court for, inter alia, a resolution of that factual issue and, in a per curiam opinion, we affirmed the judgment of the Appellate Court. *Sharp* v. *Wyatt*, supra, 230 Conn. 16. Contrary to the plaintiffs' claim, *Sharp* does not control the outcome of the present case. The plaintiffs in *Sharp* did not bring an action for wrongful death pursuant to § 52-555 but, rather, a product liability action pursuant to General Statutes § 52-572q. As we have explained, § 52-577c (b) expressly preempts § 52-577a, the statute of limitations applicable to product liability actions. See General Statutes § 52-572m (b) (" '[p]roduct liability claim' includes all claims or actions brought for personal injury, *death* or property damage"

any symptoms of their alleged exposure to hazardous chemicals and pollutants until after the limitation period of § 52-555 already had expired. The plaintiffs further contend that the legislature could not have intended for § 52-555 to serve as a bar to a wrongful death claim in circumstances in which, as in the present case, an injured victim could not have known that he or she had a claim against the alleged tortfeasor until after the limitation period had expired. Although we acknowledge that applying the limitation period of § 52-555 to the present case leads to what reasonably may be characterized as a harsh, and even unfair, result,[25] we disagree with the plaintiffs that the result in this case requires a different construction of the relevant statutory provisions. As we have explained, "[s]tatutes limiting the time within which an action may be brought are the result of a legitimate legislative determination which balances the rights and duties of competing groups. . . . A statute of limitation or of repose is designed to (1) prevent the unexpected enforcement of stale and fraudulent claims by allowing persons after the lapse of a reasonable time, to plan their affairs with a reasonable degree of certainty, free from the disruptive burden of protracted and unknown potential liability, and (2) to aid in the search for truth that may be impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents or otherwise. . . . Repose periods that have made a distinction between wrongful death actions and personal injury actions have also been held to be rationally related to the additional state

[emphasis added]). Perhaps more importantly, however, the sole issue relating to the statute of limitations that we considered in *Sharp* was the fact-based question of whether the deaths of the decedents had been caused by exposure to petroleum products. Consequently, the court had no occasion to address the issue raised by the present case, namely, whether § 52-577c (b) applies to wrongful death claims.

[25] See *Ecker* v. *West Hartford*, supra, 205 Conn. 240 (observing that repose period of § 52-555 is "unfair at times").

interest of promoting the prompt settlement of the economic and legal affairs of the deceased. . . .

"Statutes of limitation find their justification in necessity and convenience rather than logic. . . . There is no reason, constitutional or otherwise, which prevents the legislature from establishing a . . . time period that runs from the date of the act or omission complained of . . . even though at that date no person had sustained damage and therefore no cause of action had come into existence. . . . It is not the function of the court to alter a legislative policy merely because it produces unfair results. . . . Individual rights and remedies must at times and of necessity give way to the interests and needs of society." (Citations omitted; internal quotation marks omitted.) *Ecker* v. *West Hartford*, supra, 205 Conn. 239–41; see also *Daily* v. *New Britain Machine Co.*, 200 Conn. 562, 582, 512 A.2d 893 (1986) (legislature is free to enact, for reasons of policy, statute of repose that, as applied to particular factual scenario, will bar cause of action even before that action has accrued). Thus, the fact that the decedents could not have known that they had been injured prior to the expiration of the limitation period of § 52-555 does not warrant a result that is contrary to the expressed intent of the legislature.

## II

Having concluded that the plaintiffs' action is governed by the limitation period of § 52-555 and, therefore, is time barred under state law, we next must determine whether the trial court properly concluded that 42 U.S.C. § 9658 does not preempt § 52-555 for purposes of this case. We agree with the determination of the trial court.

We begin our analysis of this issue with a review of the pertinent statutory provisions. Title 42 of the United States Code, § 9658 (a) (1), provides: "In the case of

any action brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant, released into the environment from a facility, if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute." The term "federally required commencement date" is defined as "the date the plaintiff knew (or reasonably should have known) that the personal injury or property damages . . . were caused or contributed to by the hazardous substance or pollutant or contaminant concerned." 42 U.S.C. § 9658 (b) (4) (A) (2000). The term "release" is defined as "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment"; 42 U.S.C. § 9601 (22) (2000); but expressly excludes, inter alia, "any release which results in exposure to persons solely within a workplace, with respect to a claim which such persons may assert against the employer of such persons . . . ." 42 U.S.C. § 9601 (22) (2000). The term "environment" means, inter alia, any "surface water, ground water, drinking water supply, land surface or subsurface strata, or ambient air within the United States or under the jurisdiction of the United States." 42 U.S.C. § 9601 (8) (2000).

As the Second Circuit Court of Appeals has stated, "[t]he language of [42 U.S.C.] § 9658 (a) (1), specifying that the applicable state limitations period shall commence at the federally required commencement date in lieu of an earlier date provided by state law, makes it indisputably clear that Congress intended, in the cases to which [42 U.S.C.] § 9658 applies, that the [federally

required commencement date] preempt state law accrual rules if, under those rules, accrual would occur earlier than the date on which the cause of the personal injury was, or reasonably should have been, known to be the hazardous substance."[26] (Internal quotation marks omitted.) *Freier* v. *Westinghouse Electric Corp.*, 303 F.3d 176, 196 (2d Cir. 2002), cert. denied, 538 U.S. 998, 123 S. Ct. 1899, 155 L. Ed. 2d 824 (2003). Thus, 42 U.S.C. § 9658 "creates neither a separate federal cause of action based on toxic torts within its terms nor a uniform statute of limitations related to such torts, but rather provides a uniform accrual date from which the applicable state period of limitations governing such tort actions is measured . . . ."[27] (Citation omitted; internal quotation marks omitted.) *Ruffing* v. *Union Carbide Corp.*, 193 Misc. 2d 350, 359, 746 N.Y.S.2d 798 (2002).

CERCLA's "federally required commencement date" applies only to state actions for personal injury or prop-

[26] By its terms, 42 U.S.C. § 9658 (a) (1) applies only to state law actions for personal injury or property damage. See footnote 10 of this opinion. For purposes of this appeal, we assume, without deciding, that 42 U.S.C. § 9658 applies to wrongful death claims brought pursuant to state law. Cf. *Freier* v. *Westinghouse Electric Corp.*, supra, 303 F.3d 198–99 ("in light of [Congress'] intent in creating the [f]ederal [c]ommencement [d]ate, we conclude that wrongful death claims under New York law were meant to be encompassed by [42 U.S.C.] § 9658").

[27] The defendants assert that, because the limitation period of § 52-555 operates as a limitation not just on the remedy but also on liability; see *Ecker* v. *West Hartford*, supra, 205 Conn. 232; 42 U.S.C. § 9658 does not preempt § 52-555 regardless of what facts may be alleged and proven. We decline to review this claim, however, because the defendants have failed to brief it adequately. See *Knapp* v. *Knapp*, 270 Conn. 815, 823 n.8, 856 A.2d 358 (2004) ("We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . [A]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims." [Internal quotation marks omitted.]).

erty damage caused by exposure to hazardous substances "released into the environment from a facility . . . ." 42 U.S.C. § 9658 (a) (1) (2000). The definition of the term "release," for purposes of CERCLA, expressly excludes "any release which results in exposure to persons *solely within a workplace*, with respect to a claim which such persons may assert against the employer of such persons . . . ." (Emphasis added.) 42 U.S.C. § 9601 (22) (2000). Thus, to the extent that the plaintiffs' action is predicated on the decedents' alleged exposure to toxic agents within the workplace, it does not fall within the purview of 42 U.S.C. § 9658. See *Ruffing* v. *Union Carbide Corp.*, supra, 193 Misc. 2d 362 ("[c]ertainly, if an employee seeks to sue his employer for injuries sustained as a result of exposures to hazardous materials solely within the confines of his workplace, resort to the [federally required commencement date] may not be had, because there would be no release into the environment under [42 U.S.C. §] 9658 [a] [1]"); see also *Becton* v. *Rhone-Poulenc, Inc.*, 706 So. 2d 1134, 1141 (Ala. 1997) ("the federally mandated discovery rule of [42 U.S.C.] § 9658 has no application to exposure solely within the interior of the workplace"). Indeed, the plaintiffs do not dispute that a release that occurs solely within the confines of the workplace does not fall within the purview of 42 U.S.C. § 9658 (a) (1).

The plaintiffs maintain nonetheless that the allegedly continuing or ongoing contamination *outside* the workplace constitutes a "release" into the "environment" from a "facility" within the meaning of 42 U.S.C. §§ 9658 (a) (1) and 9601 (8), (9) and (22). Specifically, the plaintiffs contend that they have satisfied each of those three elements of 42 U.S.C. § 9658 (a) (1) by virtue of their allegation that the contaminants, to which the decedents initially had been exposed *inside* the workplace, lingered on the decedents' skin and clothing, and, consequently, resulted in ongoing contamination in the dece-

dents' motor vehicles and homes *outside* the workplace. A strong argument can be made, however, that the plaintiffs' allegations fall within the aforementioned workplace exclusion because the plaintiffs have failed to allege that the decedents had been exposed to any *additional* contaminants outside the workplace. Rather, the plaintiffs simply have alleged that the decedents continued to experience contamination from their initial workplace exposure. Thus, the plaintiffs' ongoing contamination allegations are entirely derivative of their allegations regarding the decedents' initial workplace exposure. Accordingly, we are dubious as to whether these allegations fall outside the workplace exclusion of 42 U.S.C. § 9601 (22).

Nevertheless, we conclude that the plaintiffs cannot prevail because they have failed to allege a release of contaminants into the "environment" within the meaning of CERCLA.[28] Even though "the term 'environment' includes 'ambient air within the United States,' numerous courts considering [42 U.S.C. §] 9658 (a) (1) have determined that 'the "environment" referred to in the statute "includes the atmosphere *external to the building*," but *not the air within a building*.' " (Emphasis in original.) *Ruffing* v. *Union Carbide Corp.*, supra, 193 Misc. 2d 362, quoting *3550 Stevens Creek Associates* v. *Barclays Bank of California*, 915 F.2d 1355, 1360 (9th Cir. 1990), cert. denied, 500 U.S. 917, 111 S. Ct. 2014, 114 L. Ed. 2d 101 (1991); see *3550 Stevens Creek Associates* v. *Barclays Bank of California*, supra, 1361 (cost recovery action for asbestos removal not covered by CERCLA because asbestos fibers, even when friable, remain inside building and, therefore, are not released

---

[28] The plaintiffs assert that the workplace where the contamination originated is the "facility" from which the toxic agents were released. In view of our determination that the plaintiffs have failed to establish that there was a release of those agents into the "environment," we need not decide whether the decedents' workplace constitutes a "facility" for purposes of 42 U.S.C. § 9658 (a) (1).

into "environment"). Thus, "it is clear that enclosed areas, even those which are not work sites where hazardous substances are used, are not considered to be part of the environment for the purposes of [42 U.S.C. § ] 9658 (a) (1)." *Ruffing* v. *Union Carbide Corp.*, supra, 365–66.

As the Seventh Circuit Court of Appeals observed in *Covalt* v. *Carey Canada, Inc.*, 860 F.2d 1434 (7th Cir. 1988), "[i]t is lexically possible to treat the 'environment' as everything pertaining to the planet Earth, so that the instant a container of asbestos is opened it is released 'into [the local portion of] the environment'. Such a global treatment erases 'released into the environment' as a limitation, however, by ensuring that it is always satisfied. No substance, except perhaps an injected drug, harms anyone unless it was at least for an instant in an 'environment'. A reading of this sort trivializes statutory language. The text [of the statutory scheme] makes more sense if read to refer to more widespread releases that affect strangers . . . ." Id., 1436–37; see also *First United Methodist Church of Hyattsville* v. *United States Gypsum Co.*, 882 F.2d 862, 869 (4th Cir. 1989) (CERCLA does not apply to action to recover cost of removing asbestos from interior of building), cert. denied, 493 U.S. 1070, 110 S. Ct. 1113, 107 L. Ed. 2d 1020 (1990); *Electric Power Board* v. *Westinghouse Electric Corp.*, 716 F. Sup. 1069, 1081 (E.D. Tenn. 1988) (leak of dialectric fluid "within the confines of a penthouse" does not constitute release into "environment" within meaning of CERCLA), aff'd sub nom. *Electric Power Board* v. *Monsanto Co.*, 879 F.2d 1368 (6th Cir. 1989), cert. denied, 493 U.S. 1022, 110 S. Ct. 724, 107 L. Ed. 2d 743 (1990); *Prudential Ins. Co.* v. *United States Gypsum*, 711 F. Sup. 1244, 1255 n.3 (D.N.J. 1989) (it is "question[able] whether the release of asbestos fibers inside [a] building constitutes a release into the environment as defined under CER-

CLA given the observations of other courts that the 'environment' referred to in the statute includes the atmosphere, external to the building, and hence does not encompass the release of a substance inside an enclosed building"); *Knox* v. *AC & S, Inc.*, 690 F. Sup. 752, 756–58 (S.D. Ind. 1988) (asbestos fibers emitted from insulation into interior of building not released into "environment" within meaning of CERCLA). Furthermore, we find it noteworthy that the Environmental Protection Agency, the agency responsible for the implementation of CERCLA, has defined "ambient air" as "air that is not completely enclosed in a building or structure . . . ." 50 Fed. Reg. 13,456, 13,462 (April 4, 1985). In the present case, the plaintiffs have alleged that toxic agents were released from the decedents' skin and clothing into their homes and motor vehicles. Because both homes and motor vehicles are enclosed areas and such areas "are not considered to be part of the environment for the purposes of [42 U.S.C. §] 9658 (a) (1)"; *Ruffing* v. *Union Carbide Corp.*, supra, 193 Misc. 2d 366; the plaintiffs have failed to allege a release into the "environment" within the meaning of 42 U.S.C. §§ 9658 (a) (1) and 9601 (8).[29]

The plaintiffs urge us to adopt the reasoning of the United States District Court in *Kowalski* v. *Goodyear*

---

[29] The plaintiffs maintain that, when the complaint is viewed in the light most favorable to sustaining its legal sufficiency, the complaint reasonably may be construed to contain an allegation that "a worker who continues to inhale and absorb chemicals going from the plant to his car and from his car to his home is exposed to releases in the ambient air." The plaintiffs apparently seek to have us construe the complaint as alleging a release of contaminants into the outside air as the decedents moved from workplace to car and from car to home. We need not decide whether such an allegation would fall within the purview of 42 U.S.C. § 9658 (a) (1) because the plaintiffs allege in their complaint only that each decedent had been exposed to toxic agents "in his [or her] home and car . . . ." We cannot read allegations into the complaint that are not there. See, e.g., *Alarm Applications Co.* v. *Simsbury Volunteer Fire Co.*, 179 Conn. 541, 549–50, 427 A.2d 822 (1980) (motion to strike is tested by allegations of complaint, which cannot be enlarged by assumption of any fact not alleged therein).

*Tire & Rubber Co.*, 841 F. Sup. 104 (W.D.N.Y. 1994), a case that arguably supports the plaintiffs' contention that the trial court improperly granted the defendants' motion to strike. In *Kowalski*, the plaintiffs, Dorothy Kowalski and her husband, Louis Kowalski, brought negligence, strict liability and loss of consortium claims against the defendant, Goodyear Tire and Rubber Company (Goodyear), alleging, inter alia, that Goodyear had failed to prevent the release of a hazardous chemical from its facility and that, as a result, Dorothy Kowalski contracted bladder cancer. Id., 105–106. The release allegedly occurred when Louis Kowalski, a longtime employee of Goodyear, transported the hazardous chemical into his home on his hair, skin, and clothes, thereby exposing his wife to those chemicals. Id., 105. The District Court concluded that the complaint alleged a release into the environment within the meaning of 42 U.S.C. § 9658 because "the remedial purposes of [CERCLA] and the language concerning the release of chemicals into the environment can be read to include hazardous chemicals carried out of the workplace on [an employee's] person and clothing which have the *potential of causing injuries to those who come in contact with such employees.*" (Emphasis added.) Id., 108. Thus, the District Court predicated its conclusion on the fact that a third party was exposed to the hazardous substances. In the present case, by contrast, the plaintiffs have not alleged exposure to any third parties. Nevertheless, to the extent that the reasoning of the District Court in *Kowalski* logically may be extended to employees who are exposed to the kind of continuing contamination outside of the workplace that is alleged by the plaintiffs in the present case, we decline to extend that reasoning to the facts of the present case because the District Court " 'did not . . . even begin to explain how either the purposes of [42 U.S.C. § 9658 (a) (1)] or its language could be read to convert a house into

the "environment", especially as that term has been defined in the statute.'" *Ruffing* v. *Union Carbide Corp.*, supra, 193 Misc. 2d 372; see also V. Delhotal, "Re-Examining CERCLA Section 309: Federal Preemption of State Limitations Periods," 34 Washburn L.J. 415, 449 & n.236 (1994) (observing that *Kowalski* represents "[t]he most extreme view of the breadth of the term 'environment,'" that "[t]he court [in *Kowalski*] noted that [the] plaintiffs offered no case law to the contrary and relied on analysis of the statutory language," and that it was questionable whether that court read "the definition of environment" contained in statute); cf. *Rivas* v. *Safety-Kleen Corp.*, 98 Cal. App. 4th 218, 239, 119 Cal. Rptr. 2d 503 (2002) ("[a]ccepting appellants' contention that a few drops of solvent on their clothing constitutes a release into the environment for purposes of CERCLA would result in the trivializing of the statutory language which the courts have sought to avoid by restricting the definition of the term"), review denied, Docket No. B133572, 2002 Cal. LEXIS 5510 (August 14, 2002).[30]

---

[30] The plaintiffs also maintain that *Vermont* v. *Staco, Inc.*, 684 F. Sup. 822 (D. Vt. 1988), rescinded and vacated in part on other grounds, Docket No. 86-190, 1989 U.S. Dist. LEXIS 17341 (April 20, 1989), supports their contention that their complaint alleges a "release into the environment from a facility" within the meaning of 42 U.S.C. § 9658 (a) (1). We disagree. In *Staco, Inc.*, the plaintiffs, the state of Vermont and the village of Poultney, Vermont, brought an action against the defendant, Staco, Inc., a manufacturer of mercury thermometers, among others, under CERCLA and state environmental statutes. Id., 825. The plaintiffs sought to recover response costs for the cleanup and removal of mercury from a local water treatment facility, certain sewer lines and septic systems. Id. In support of their motion for partial summary judgment, the plaintiffs presented documentation establishing that "mercury was released from the Staco plant on the bodies and clothing of the workers"; id., 833; and that that mercury had found its way into workers' septic systems and into the public sewer system. Id. In light of this proof, the District Court concluded that the plaintiffs had established that mercury had been released into the environment. Id., 834. In contrast to the evidence of extensive environmental contamination adduced by the plaintiffs in *Staco, Inc.*, the plaintiffs in the present case have alleged only that toxic agents were released into their homes and motor vehicles. As we have explained, such a release is not a release into the environment within the meaning of CERCLA.

The plaintiffs assert that this conclusion is inconsistent with the remedial purpose of CERCLA. We also disagree with this contention. We acknowledge that CERCLA is a remedial statutory scheme and, therefore, that its provisions must be construed liberally to effectuate its purpose. See, e.g., *Commander Oil Corp.* v. *Barlo Equipment Corp.*, 215 F.3d 321, 327 (2d Cir.) ("[b]ecause it is a remedial statute, CERCLA must be construed liberally to effectuate its two primary goals: [1] enabling the [Environmental Protection Agency] to respond efficiently and expeditiously to toxic spills, and [2] holding those parties [potentially] responsible for the releases liable for the costs of the cleanup" [internal quotation marks omitted]), cert. denied, 531 U.S. 979, 121 S. Ct. 427, 148 L. Ed. 2d 436 (2000). "Nevertheless, CERCLA should not be interpreted in a manner which fails to acknowledge its defined limits." *Ruffing* v. *Union Carbide Corp.*, supra, 193 Misc. 2d 374. "By retaining the requirements that the exposure result from 'release' into the 'environment' from a 'facility' as those terms are used for purposes of a CERCLA cost recovery action, Congress expressed its intent to limit the statute's scope." *Rivas* v. *Safety-Kleen Corp.*, supra, 98 Cal. App. 4th 236. As is apparent from its plain language, "[42 U.S.C. §] 9658 was never meant to extend to all state court lawsuits for personal injury and property damage arising from exposure to toxic substances." Id. Indeed, as the court in *Covalt* v. *Carey Canada, Inc.*, supra, 860 F.2d 1434, stated after examining the language, purpose and legislative history of 42 U.S.C. § 9658 (a) (1), "[g]iving [that provision] its broadest possible meaning not only preempts wide sweeps of state law—something we do not lightly attribute to Congress—but also thrusts CERCLA into the domain of other federal rules expressly dealing with employees' safety, another thing we do not lightly attribute to Congress." Id., 1439; see also *Becton* v. *Rhone-Poulenc, Inc.*,

supra, 706 So. 2d 1137 (adopting reasoning of *Covalt*); *Rivas* v. *Safety-Kleen Corp.*, supra, 98 Cal. App. 4th 236 (same). For the foregoing reasons, we conclude that the trial court properly determined that the plaintiffs' allegations of contamination outside the workplace do not meet the requirement of a release into the "environment" within the meaning of 42 U.S.C. § 9658 (a) (1).

The judgment is affirmed.

In this opinion the other justices concurred.