## LEANDRO RIZZUTO *v.* DAVIDSON LADDERS, INC., ET AL.
### (SC 17310)

Sullivan, C. J., and Borden, Norcott, Palmer and Vertefeuille, Js.*

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued December 2, 2005—officially released October 3, 2006

*Michael L. Oh,* with whom, on the brief, were *Michael A. Stratton, Joel T. Faxon* and *Michael R. Denison,* for the appellant (plaintiff).

*John B. Farley,* with whom were *Bruce H. Raymond* and, on the brief, *N. Kane Bennett,* for the appellee (defendant Home Depot USA, Inc.).

*Opinion*

BORDEN, J. The dispositive issue in this appeal[1] is whether this state should recognize intentional spoliation of evidence as a cognizable independent tort. We conclude that, under the circumstances alleged in the present case, we should do so.

The record reveals the following relevant factual allegations and procedural history. On December 16, 1996, the plaintiff, Leandro Rizzuto, climbed a ladder manufactured by the named defendant, Davidson Ladders, Inc. (Davidson),[2] while shopping at a Home Depot store in Norwalk. The ladder collapsed suddenly and the plaintiff fell to the floor, incurring serious physical injuries. In August, 1997, the plaintiff filed a product liability action against Davidson and the defendant, Home Depot USA, Inc. (Home Depot), alleging, inter alia, that the ladder had been manufactured and designed improperly, and had been sold without proper warnings in violation of General Statutes § 52-572m et seq. Thereafter, the plaintiff asked the defendants repeatedly to preserve the ladder and to afford him an opportunity to examine the ladder. In 1998, the defendants' expert examined the ladder and concluded that it was not defective. The defendants thereafter destroyed the lad-

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] On December 1, 2005, the day before oral argument in the present appeal, the plaintiff withdrew his claims against Davidson. Accordingly, Davidson is no longer a party to this appeal.

der, despite the fact that the plaintiff had never had an opportunity to inspect it.

On May 8, 2001, the plaintiff amended his complaint to add a claim for intentional spoliation of evidence. Specifically, the plaintiff alleged that: (1) "[b]y destroying and/or not preserving [the] ladder, the defendants . . . intentionally spoliated evidence critical to [the plaintiff's] pending products liability action"; (2) "[t]he plaintiff's case has been damaged to the point where no expert can conclusively establish the mechanism of the defect which caused the plaintiff's injuries"; and (3) "as a result of the spoliation, the plaintiff may not be able to prove his case, and his interest in the [product liability cause] of action . . . will forever be lost." The defendants moved to strike the plaintiff's intentional spoliation of evidence claim, contending that no such cause of action exists in this state. The trial court agreed with the defendants and, on March 19, 2003, granted the motion to strike.

Meanwhile, on November 25, 2002, the plaintiff requested permission to file a second amended complaint alleging that Home Depot's "pattern in practice [of] destroy[ing] critical pieces of evidence that are the subject of litigation against it" violates the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. The defendants objected, claiming that the proposed amendment was untimely and unsupported by any factual allegations. On March 19, 2003, the trial court sustained the defendants' objection.

Thereafter, the plaintiff withdrew the product liability claims and moved for judgment in favor of the defendants on the claim of intentional spoliation of evidence. The trial court granted the plaintiff's motion and, on June 2, 2003, rendered judgment in favor of the defendants. This appeal followed.

The plaintiff claims that the trial court improperly granted the defendants' motion to strike his intentional spoliation of evidence claim on the ground that spoliation of evidence is not a cognizable tort, and improperly sustained the defendants' objection to his request to file a second amended complaint. We agree with the plaintiff's first claim, but disagree with his second claim. Accordingly, we reverse in part and affirm in part the judgment of the trial court.

I

The plaintiff first claims that the trial court improperly granted the defendants' motion to strike his intentional spoliation of evidence claim on the ground that no such cause of action exists. Home Depot responds that we need not determine whether this state recognizes the tort of intentional spoliation of evidence because the plaintiff's complaint fails to plead all of the essential elements of the tort. Alternatively, Home Depot maintains that this state does not recognize intentional spoliation of evidence as an independent cause of action. We agree with the plaintiff.

"The standard of review in an appeal challenging a trial court's granting of a motion to strike is well established. A motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court. As a result, our review of the court's ruling is plenary. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Internal quotation marks omitted.) *Sullivan* v. *Lake Compounce Theme Park, Inc.*, 277 Conn. 113, 117–18, 889 A.2d 810 (2006).

## A

We first address Home Depot's claim that we need not determine whether this state recognizes the tort of intentional spoliation of evidence because, even if such a cause of action exists, the trial court properly struck the plaintiff's spoliation claim. Specifically, Home Depot contends that the destruction of the ladder did not hinder the plaintiff's ability to prevail on his product liability claims, and the plaintiff's voluntary withdrawal of his product liability claims precludes a spoliation claim as a matter of law. We reject these claims.

"Disruption of a party's case is a critical element of the intentional spoliation tort." M. M. Koesel & T. L. Turnbull, Spoliation of Evidence: Sanctions and Remedies for Destruction of Evidence in Civil Litigation (2d Ed. 2006), p. 93; see, e.g., *Coleman* v. *Eddy Potash, Inc.*, 120 N.M. 645, 649, 905 P.2d 185 (1995), overruled in part on other grounds by *Delgado* v. *Phelps Dodge Chino, Inc.*, 131 N.M. 272, 34 P.3d 1148 (2001); *Smith* v. *Howard Johnson Co.*, 67 Ohio St. 3d 28, 29, 615 N.E.2d 1037 (1993); *Hannah* v. *Heeter*, 213 W. Va. 704, 717, 584 S.E.2d 560 (2003). Accordingly, most states that recognize the tort of intentional spoliation of evidence require a plaintiff to establish, inter alia, that "the spoliated evidence was vital to a party's ability to prevail in [a] pending or potential civil action . . . ." *Hannah* v. *Heeter*, supra, 717.

Home Depot does not dispute that the ladder was vital to the plaintiff's ability to prevail on his claim that the ladder was manufactured defectively. Rather, Home Depot contends that the ladder was not vital to the plaintiff's claims that the ladder was designed defectively or sold without adequate warnings because these claims, Home Depot maintains, could have been proven through the use of exemplars. In support of this argument, Home Depot relies on *Beers* v. *Bayliner Marine*

*Corp.*, 236 Conn. 769, 778, 675 A.2d 829 (1996), wherein this court concluded that an "[adverse] inference may not be drawn with respect to a claim based upon design defect when the destruction [of evidence] would not hinder the defense."[3] We reject this claim because whether the destruction of the ladder would have hindered the plaintiff's ability to prevail on his design defect or inadequate warnings claims is a factual question that cannot be resolved on a motion to strike. For example, the record in the present case does not reveal whether the parties knew the model of the collapsed ladder, and, if so, whether other exemplars of that model are available, and, if other exemplars are available, whether their condition is substantially similar to the condition of the spoliated ladder. It is sufficient, at this stage of the proceedings, that the plaintiff's complaint alleges that the spoliated ladder was "critical evidence" in the proof of his product liability claims. Accordingly, we conclude that the plaintiff's complaint sufficiently states a claim for intentional spoliation of evidence, assuming that this state recognizes such a cause of action.

Home Depot next claims that the trial court properly struck the plaintiff's intentional spoliation of evidence

---

[3] Home Depot also relies on *Beil* v. *Lakewood Engineering & Mfg. Co.*, 15 F.3d 546 (6th Cir. 1994), and *Columbian Rope Co.* v. *Todd*, 631 N.E.2d 941 (Ind. App. 1994), in support of this claim. We conclude that Home Depot's reliance on these cases is misplaced because they stand simply for the proposition that a plaintiff may be able to prove the essential elements of a design defect or inadequate warnings claim in the absence of the allegedly defective product. See *Beil* v. *Lakewood Engineering & Mfg. Co.*, supra, 553 (district court improperly dismissed plaintiff's product liability claim, inter alia, because plaintiff may be able to prove design defect or product defect in absence of spoliated evidence); *Columbian Rope Co.* v. *Todd*, supra, 944 (trial court properly permitted plaintiff's expert witness to testify as to inadequate warnings on exemplars of spoliated product). We agree that a plaintiff *may* be able to prove such claims without the allegedly defective product, but we cannot conclude, as a matter of law, that a plaintiff *always* will be able to do so.

claim because the plaintiff voluntarily withdrew his product liability action. In support of this claim, Home Depot relies on *Petrik* v. *Monarch Printing Corp.*, 150 Ill. App. 3d 248, 249, 501 N.E.2d 1312 (1986), appeal denied, 114 Ill. 2d 556, 508 N.E.2d 735 (1987), in which the plaintiff brought an action for retaliatory discharge against his former employer, Monarch Printing Corporation (Monarch). After the plaintiff lost his retaliatory discharge suit, he filed a claim against Monarch for intentional spoliation of evidence, alleging that Monarch's intentional destruction of evidence hindered his ability to prevail on his retaliatory discharge action. Id., 249–51. The trial court concluded that intentional spoliation of evidence was not a cognizable tort and dismissed the plaintiff's spoliation claim. Id., 250–51. On appeal, the Appellate Court of Illinois determined that it need not decide whether Illinois law would recognize a spoliation tort because the plaintiff had failed to establish "a nexus between the failure of his [underlying] suit and the destruction" of evidence. Id., 262. Specifically, the court noted in *Petrik* that the plaintiff essentially had abandoned his underlying retaliatory discharge action and, as such, concluded that the trial court's "[d]ismissal of [the] plaintiff's retaliatory-discharge suit was caused, in the first instance, by [the] plaintiff's abandonment of that theory of the case, rather than [the] defendant's destruction of any documents that might support that theory." Id., 263. Recognition of a spoliation tort under such circumstances, the court concluded, "would encourage those hoping to bring spoliation claims to treat the first suit as a 'dry run' and generate only half-hearted efforts in their prosecution." Id., 263–64; see also *Miller* v. *Allstate Ins. Co.*, 650 So. 2d 671, 674 (Fla. App.) (where viable means exist, party must pursue underlying cause of action prior to, or together with, intentional spoliation of evidence claim), cert. denied, 659 So. 2d 1087 (Fla. 1995).

We conclude that Home Depot's reliance on *Petrik* is misplaced. The plaintiff in the present case, unlike the plaintiff in *Petrik*, pursued vigorously both his product liability claims and his intentional spoliation of evidence claim in the same litigation. The plaintiff only withdrew his product liability claims *after* the trial court had granted the defendants' motion to strike. As such, the sufficiency of the plaintiff's complaint, and the propriety of the trial court's ruling, cannot be measured by events that took place subsequent to, and in reliance on, that ruling. Indeed, the plaintiff represents in his brief to this court that he was "forced to withdraw his product liability [claims] against the defendants" because Home Depot's destruction of the ladder, combined with the trial court's grant of the defendants' motion to strike, left the plaintiff "with no ability to present evidence to sustain the product liability claim[s] . . . ." He therefore withdrew the product liability claims and moved for a final judgment from which he could appeal.

In any event, we would decline to require a spoliation plaintiff to pursue a futile lawsuit to establish a causal nexus between a defendant's alleged spoliation of evidence and the failure of the underlying action. See *Mayfield* v. *Acme Barrel Co.*, 258 Ill. App. 3d 32, 38, 629 N.E.2d 690 (1994) ("no action for spoliation can be brought until after the underlying claim which is dependent upon the missing evidence is lost"); but see *Boyd* v. *Travelers Ins. Co.*, 166 Ill. 2d 188, 198, 652 N.E.2d 267 (1995) (plaintiff need not lose underlying action to bring spoliation claim, instead, plaintiff may bring spoliation claim concurrently with underlying action). We agree with those jurisdictions that have concluded that requiring a plaintiff to pursue and to lose the underlying litigation prior to bringing a spoliation claim "is too harsh" and "ignores the plaintiff's interest in securing a reasonable recovery" for the alleged loss of the underly-

ing action. *Holmes* v. *Amerex Rent-A-Car*, 710 A.2d 846, 851 (D.C. 1998); see also *Oliver* v. *Stimson Lumber Co.*, 297 Mont. 336, 350, 993 P.2d 11 (1999) (same). Accordingly, we conclude that the plaintiff's withdrawal of his product liability action did not render his intentional spoliation of evidence claim legally insufficient.

B

We next address whether this state recognizes the tort of intentional spoliation of evidence. As an initial matter, we note briefly what is not at issue in the present case. The parties do not dispute that a defendant in a pending case has a legal duty to preserve relevant evidence.[4] The parties further do not dispute that "the intentional destruction of evidence should be condemned. Destroying evidence can destroy fairness and justice, for it increases the risk of an erroneous decision on the merits of the underlying cause of action. Destroying evidence can also increase the costs of litigation as parties attempt to reconstruct the destroyed evidence or to develop other evidence, which may be less accessible, less persuasive, or both." *Cedars-Sinai Medical Center* v. *Superior Court*, 18 Cal. 4th 1, 8, 954 P.2d 511, 74 Cal. Rptr. 2d 248 (1998). What is at issue in the present case, however, is whether the tort of intentional spoliation of evidence is necessary to compensate the victims of spoliation and to deter future spoliation. We conclude that recognition of the tort is necessary to accomplish these goals when a first party defendant[5]

[4] See generally *Trevino* v. *Ortega*, 969 S.W.2d 950, 955 (Tex. 1998) (Baker, J., concurring) (exploring scope of parties' common-law duty to preserve evidence relevant to pending litigation).

[5] "A first party [defendant] spoliator is a party to the underlying action who has destroyed or suppressed evidence relevant to the plaintiff's claims against that party." *Dowdle Butane Gas Co.* v. *Moore*, 831 So. 2d 1124, 1128 (Miss. 2002). A third party defendant spoliator, however, "is oftentimes a stranger to the underlying litigation, but . . . is alleged to have destroyed evidence relevant to the plaintiff's causes of action against another defendant(s)." Id., 1128–29; id., 1129 ("[i]n other words, a third-party spoliator is a party not alleged to have committed the underlying tort as to which the

destroys evidence intentionally with the purpose and effect of precluding a plaintiff from fulfilling his burden of production in a pending or impending case. Because the plaintiff in the present case alleges that the defendants' bad faith intentional destruction of the ladder deprived him of the evidence he needed to establish a prima facie case of product liability against the defendants, we conclude that the trial court improperly struck the plaintiff's intentional spoliation of evidence claim.

"It cannot be doubted that we have the inherent power to recognize new tort causes of action, whether derived from a statutory provision; see, e.g., *Mead* v. *Burns*, 199 Conn. 651, 663, 509 A.2d 11 (1986) (creating damages action under Connecticut Unfair Trade Practices Act for violations of Connecticut Unfair Insurance Practices Act); or rooted in the common law. See, e.g., *Sheets* v. *Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 480, 427 A.2d 385 (1980) (recognizing tort of wrongful discharge); *Urban* v. *Hartford Gas Co.*, 139 Conn. 301, 307, 93 A.2d 292 (1952) (recognizing torts of intentional and negligent infliction of emotional distress)." *Binette* v. *Sabo*, 244 Conn. 23, 33, 710 A.2d 688 (1998).

"[T]he fundamental policy purposes of the tort compensation system [are] compensation of innocent parties, shifting the loss to responsible parties or distributing it among appropriate entities, and deterrence of wrongful conduct . . . . It is sometimes said that compensation for losses is the primary function of tort law . . . [but it] is perhaps more accurate to describe the primary function as one of determining when compensation [is] required. . . . An equally compelling function of the tort system is the prophylactic

lost or destroyed evidence related" [internal quotation marks omitted]). We express no opinion as to whether this state recognizes a cause of action for third party spoliation of evidence.

factor of preventing future harm . . . . The courts are concerned not only with compensation of the victim, but with admonition of the wrongdoer. . . . [I]mposing liability for consequential damages often creates significant risks of affecting conduct in ways that are undesirable as a matter of policy. Before imposing such liability, it is incumbent upon us to consider those risks." (Citations omitted; internal quotation marks omitted.) *Lodge v. Arett Sales Corp.*, 246 Conn. 563, 578–79, 717 A.2d 215 (1998).

"The underlying premise for recognition of [the tort of intentional spoliation of evidence] is that a victim of spoliation is entitled to recover compensatory, and possibly punitive, damages for the loss of a prospective lawsuit. The ineffectiveness of judicial sanctions in deterring spoliation prompted, in part, the recognition of this tort. . . . The spoliation tort protects a litigant's interest in bringing a prospective cause of action by compensat[ing] the non-spoliating litigant for uninvited interference with the prospective lawsuit resulting from destroyed evidence." (Internal quotation marks omitted.) M. M. Koesel & T. L. Turnbull, supra, pp. 84–85; see also *Holmes* v. *Amerex Rent-A-Car*, supra, 710 A.2d 849 ("[s]ome remedy . . . should be available to those whose expectancy of recovery has been eliminated . . . through the [intentional] acts of another"); *Hazen* v. *Anchorage*, 718 P.2d 456, 464 (Alaska 1986) ("a prospective civil action in a product liability case is a valuable probable expectancy that the [c]ourt must protect from the kind of interference alleged herein" [internal quotation marks omitted]).

To determine whether existing nontort remedies are sufficient to compensate victims of intentional spoliation and to deter future spoliation, we first analyze the scope and applicability of these remedies under the facts alleged herein. This court first addressed the effect of intentional spoliation of evidence in a products liabil-

ity case in *Beers* v. *Bayliner Marine Corp.*, supra, 236 Conn. 769. In *Beers*, the plaintiffs brought a product liability claim against the defendant for personal injuries sustained while traveling in a motor boat. Id., 770–71. Prior to bringing the claim, however, one of the plaintiffs had removed and disposed of the boat's motor. Id., 772–73. The defendant moved for summary judgment, claiming that it was unable to defend itself against the plaintiff's product liability claim as a result of the plaintiff's intentional spoliation of evidence. Id., 773. The trial court agreed, and rendered summary judgment in favor of the defendant. Id., 774.

On appeal, we concluded that a victim of spoliation is not entitled to summary judgment as a matter of law; id., 775; and, accordingly, we reversed the judgment of the trial court. Id., 781. Instead, we adopted "the rule of the majority of the jurisdictions that have addressed the issue [of spoliation of evidence] in a civil context, which is that the trier of fact may draw an inference from the intentional spoliation of evidence that the destroyed evidence would have been unfavorable to the party that destroyed it." Id., 775. To be entitled to this inference, the victim of spoliation must prove that: (1) the spoliation was intentional, in the sense that it was purposeful, and not inadvertent;[6] (2) the destroyed evidence was relevant to the issue or matter for which the party seeks the inference; and (3) he or she acted with due diligence with respect to the spoliated evidence. Id., 777–78. We emphasized that the adverse inference is permissive, and not mandatory, and that it "does not supply the place of evidence of material facts and does not shift the burden of proof so as to relieve the party upon whom it rests of the necessity of estab-

---

[6] We clarified that the spoliator need not have acted with the intent to perpetrate a fraud, and explicitly left "to another day the determination of the appropriate remedy when the spoliator's intent had been to perpetrate a fraud . . . ." *Beers* v. *Bayliner Marine Corp.*, supra, 236 Conn. 777 n.11.

lishing a prima facie case, although it may turn the scale when the evidence is closely balanced." (Internal quotation marks omitted.) Id., 779.

Pursuant to *Beers*, a party "suffering from spoliation cannot build an underlying case on the spoliation inference alone; for an underlying claim to be actionable, the [party] must also possess some concrete evidence that will support the underlying claim." B. S. Wilhoit, "Spoliation of Evidence: The Viability of Four Emerging Torts," 46 UCLA L. Rev. 631, 648 (1998). Thus, a plaintiff in a product liability action cannot rely solely on the spoliation inference to withstand a motion for summary judgment or a motion for a directed verdict; he must also have some independent concrete evidence of a product defect.

In the present case, the plaintiff alleges that the defendants' intentional, bad faith destruction of the ladder deprived him of the evidence he needed to establish a prima facie case of product liability against the defendants.[7] Assuming this fact to be true, as we must do at

---

[7] The plaintiff's complaint does not allege explicitly either that the defendants destroyed the ladder in bad faith, or that the plaintiff was unable to satisfy his burden of production without the ladder. The plaintiff's complaint does allege, however, that the defendants destroyed the ladder "intentionally" and, as a result, "the plaintiff may not be able to prove his case, and his interest in the [product liability cause] of action . . . will forever be lost." Further, in his memorandum in opposition to the defendants' motion to strike, the plaintiff claimed that the defendants had destroyed the ladder in bad faith, and that the plaintiff likely would be unable to make out a prima facie case of product liability without the ladder. Accordingly, construing the complaint broadly and consistent with the general theory pursued in the trial court, we conclude that the complaint sufficiently alleges that the defendants destroyed the ladder in bad faith with the purpose and effect of preventing the plaintiff from establishing a prima facie case of product liability. See, e.g., *Greco* v. *United Technologies Corp.*, 277 Conn. 337, 347, 890 A.2d 1269 (2006) ("[I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . Thus, we assume the truth of both the specific factual allegations and any facts fairly provable thereunder. In doing so, moreover, we read the allegations broadly . . . rather than narrowly." [Internal quotation marks omitted.]); *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, 265 Conn. 79, 104, 828 A.2d

this stage of the proceedings; see, e.g., *Cotto* v. *United Technologies Corp.*, 251 Conn. 1, 42, 738 A.2d 623 (1999) ("[b]ecause the present appeal follows from a motion to strike, the facts alleged in the plaintiff's complaint must be taken to be true, and construed in the manner most favorable to the pleader"); the adverse inference in *Beers* would not have assisted the plaintiff in fulfilling his burden of production because it "does not supply the place of evidence of material facts" or "shift the burden of proof . . . ." (Internal quotation marks omitted.) *Beers* v. *Bayliner Marine Corp.*, supra, 236 Conn. 779. Because the *Beers* inference cannot be invoked by a victim of spoliation who has been deprived of the concrete evidence necessary to establish a prima facie case, we conclude that it provides an insufficient compensatory and deterrent effect under the present circumstances.

We next turn to the efficacy of the judicial sanctions available under our rules of practice for intentional spoliation of evidence. Practice Book § 13-14[8] provides

31 (2003) ("[T]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically. . . . [T]he complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory upon which it proceeded, and do substantial justice between the parties." [Citation omitted; internal quotation marks omitted.]); see also *Coleman* v. *Eddy Potash, Inc.*, supra, 120 N.M. 649–50 (allegation that defendant " 'acted intentionally' and 'such acts were designed to disrupt [the] plaintiff's case' . . . together with allegations that establish causation and damages, are sufficient to give notice of the [the plaintiff's spoliation claim] and legally sufficient to state a claim for relief").

Furthermore, because the plaintiff has alleged intentional *bad faith* spoliation, as opposed to intentional *innocent* spoliation; see, e.g., *Beers* v. *Bayliner Marine Corp.*, supra, 236 Conn. 777 and n.11; we need not decide whether an allegation of intentional spoliation, unaccompanied by an allegation of bad faith, would suffice.

[8] Practice Book § 13-14 provides: "(a) If any party has failed to answer interrogatories or to answer them fairly, or has intentionally answered them falsely or in a manner calculated to mislead, or has failed to respond to requests for production or for disclosure of the existence and contents of an insurance policy or the limits thereof, or has failed to submit to a physical or mental examination, or has failed to comply with a discovery order made

that a party's failure to comply with an order of discovery may result in: (1) the entry of a nonsuit or default judgment; (2) the payment of the opposing party's costs of seeking discovery, including reasonable attorney's fees; (3) "[t]he entry of an order that the matters regarding which the discovery was sought or other designated facts shall be taken to be established for the purposes of the action"; (4) "[t]he entry of an order prohibiting the party who has failed to comply from introducing designated matters in evidence"; and (5) "[i]f the party failing to comply is the plaintiff, the entry of a judgment of dismissal." Like the adverse inference in *Beers*, most of these sanctions are of no use to a plaintiff who is unable to fulfill his or her burden of production as a result of a defendant's intentional spoliation of evidence. Specifically, a judgment of dismissal and an entry of nonsuit are available only if the spoliator is the plaintiff. See General Statutes § 52-210;[9] Practice Book § 13-

---

pursuant to Section 13-13, or has failed to comply with the provisions of Section 13-15, or has failed to appear and testify at a deposition duly noticed pursuant to this chapter, or has failed otherwise substantially to comply with any other discovery order made pursuant to Sections 13-6 through 13-11, the judicial authority may, on motion, make such order as the ends of justice require.

"(b) Such orders may include the following:

"(1) The entry of a nonsuit or default against the party failing to comply;

"(2) The award to the discovering party of the costs of the motion, including a reasonable attorney's fee;

"(3) The entry of an order that the matters regarding which the discovery was sought or other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

"(4) The entry of an order prohibiting the party who has failed to comply from introducing designated matters in evidence;

"(5) If the party failing to comply is the plaintiff, the entry of a judgment of dismissal.

"(c) The failure to comply as described in this section may not be excused on the ground that the discovery is objectionable unless written objection as authorized by Sections 13-6 through 13-11 has been filed."

[9] General Statutes § 52-210 provides: "If, on the trial of any issue of fact in a civil action, the plaintiff has produced his evidence and rested his cause, the defendant may move for judgment as in case of nonsuit, and the court

14 (a) (5). Further, the sanctions regarding the introduction of evidence are immaterial if a plaintiff is unable to muster sufficient evidence to present his claim to a fact finder. See Practice Book § 13-14 (b) (3) and (4).

Such plaintiffs may, however: (1) request the entry of default judgment; (2) move for a finding of civil or criminal contempt; Practice Book § 1-21A;[10] or (3) seek to recover attorney's fees for the defendant's alleged "dilatory, bad faith and harassing litigation conduct . . . ." (Internal quotation marks omitted.) *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, 257 Conn. 1, 9–10, 776 A.2d 1115 (2001); see also *CFM of Connecticut, Inc.* v. *Chowdhury*, 239 Conn. 375, 393–94, 685 A.2d 1108 (1996), overruled in part on other grounds by *State* v. *Salmon*, 250 Conn. 147, 154–55, 735 A.2d 333 (1999). Moreover, we note that it is a felony to destroy or to tamper with evidence while an official proceeding is pending; see General Statutes §§ 53a-155 and 53a-146 (1);[11] and that an attorney who engages in the intentional

---

may grant such motion, if in its opinion the plaintiff has failed to make out a prima facie case."

[10] Practice Book § 1-21A provides: "The violation of any court order qualifies for criminal contempt sanctions. Where, however, the dispute is between private litigants and the purpose for judicial intervention is remedial, then the contempt is civil, and any sanctions imposed by the judicial authority shall be coercive and nonpunitive, including fines, to ensure compliance and compensate the complainant for losses. Where the violation of a court order renders the order unenforceable, the judicial authority should consider referral for nonsummary criminal contempt proceedings."

[11] General Statutes § 53a-155 (a) provides: "A person is guilty of tampering with or fabricating physical evidence if, believing that an official proceeding is pending, or about to be instituted, he: (1) Alters, destroys, conceals or removes any record, document or thing with purpose to impair its verity or availability in such proceeding; or (2) makes, presents or uses any record, document or thing knowing it to be false and with purpose to mislead a public servant who is or may be engaged in such official proceeding."

General Statutes § 53a-146 (1) provides: "An 'official proceeding' is any proceeding held or which may be held before any legislative, judicial, administrative or other agency or official authorized to take evidence under oath, including any referee, hearing examiner, commissioner or notary or other person taking evidence in connection with any proceeding."

spoliation of evidence may face a wide variety of professional sanctions. See Practice Book §§ 2-37, 2-44; Rules of Professional Conduct 8.4.

Although these sanctions provide a limited deterrent effect, with the exception of an entry of default judgment, none of them attempts to compensate the plaintiff for the loss of his underlying civil action. Even the propriety and applicability of an entry of default judgment, however, is questionable under the present circumstances. As we previously explained, this court concluded in *Beers* that a party's intentional spoliation of evidence does not relieve the spoliation victim of the burden to produce concrete evidence to support his underlying claim. *Beers* v. *Bayliner Marine Corp.*, supra, 236 Conn. 779. As such, it would appear to be inconsistent with *Beers* to conclude that a victim of spoliation is entitled to judgment as a matter of law, despite his inability to satisfy his burden of proof, as a consequence of a defendant's intentional spoliation of evidence. To the extent that a default judgment would be proper, we note that it is a discretionary sanction of last resort and, as such, likely would be available only in the most egregious cases. See, e.g., *Marfia* v. *T.C. Ziraat Bankasi*, 100 F.3d 243, 249 (2d Cir. 1996) (entry of default judgments is "the most severe sanction which the court may apply" [internal quotation marks omitted]); *Evans* v. *General Motors Corp.*, 277 Conn. 496, 523–24, 893 A.2d 371 (2006) ("although [entry of a default judgment] is not an abuse of discretion whe[n] a party shows a deliberate, contumacious or unwarranted disregard for the court's authority . . . the court should be reluctant to employ the sanction . . . except as a last resort" [internal quotation marks omitted]). Accordingly, we conclude that existing nontort remedies are insufficient to compensate a victim of spoliation who has been deprived completely of his

underlying civil action as a result of a defendant's intentional, bad faith destruction of evidence.

Moreover, we conclude that these remedies do not adequately deter future intentional, bad faith spoliation of evidence. In a product liability action, the allegedly defective product often is the best if not the only evidence of a product defect. Where the product is in the sole custody or control of the defendant, the possible specter of nontort sanctions may pale in comparison to the costs of a lengthy trial or a substantial award of damages. Indeed, the more defective the product, the stronger the financial incentive to destroy or to dispose of the inculpatory evidence so as to prevent the plaintiff from proving his claim. In other words, under the existing remedies, the more effective the defendant's spoliation conduct, the greater the financial reward.

For the foregoing reasons, we conclude that the existing nontort remedies are insufficient to compensate victims of spoliation and to deter future spoliation when a first party defendant destroys evidence intentionally with the purpose and effect of precluding a plaintiff from fulfilling his burden of production in a pending or impending case. We therefore conclude that recognition of an independent cause of action for intentional spoliation of evidence is necessary to fulfill the public policy goals of the tort compensation system.

"In defining the parameters of the tort of intentional spoliation of evidence we look to the several states that currently recognize this tort. Intentional spoliation of evidence is defined as 'the intentional destruction, mutilation, or significant alteration of potential evidence for the purpose of defeating another person's recovery in a civil action.' " *Hannah* v. *Heeter*, supra, 213 W. Va. 716, quoting *Coleman* v. *Eddy Potash, Inc.*, supra, 120 N.M. 649. "Although no uniform body of case law has developed regarding the precise contours of this tort,

most states that have adopted the tort agree that the elements of intentional spoliation consist of: (1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of [the] defendant that litigation exists or is probable, (3) willful destruction of evidence by [the] defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts."[12] (Internal quotation marks omitted.) M. M. Koesel & T. L. Turnbull, supra, pp. 88–89. In light of the consensus among our sister states, we conclude that the tort of intentional spoliation of evidence consists of the following essential elements: (1) the defendant's knowledge of a pending or impending civil action involving the plaintiff; (2) the defendant's destruction of evidence;

---

[12] See, e.g., *Coleman* v. *Eddy Potash, Inc.*, supra, 120 N.M. 649 ("[1] the existence of a potential lawsuit; [2] the defendant's knowledge of the potential lawsuit; [3] the destruction, mutilation, or significant alteration of potential evidence; [4] intent on part of the defendant to disrupt or defeat the lawsuit; [5] a causal relationship between the act of spoliation and the inability to prove the lawsuit; and [6] damages"); *Smith* v. *Howard Johnson Co.*, supra, 67 Ohio St. 3d 29 ("[1] pending or probable litigation involving the plaintiff, [2] knowledge on the part of [the] defendant that litigation exists or is probable, [3] willful destruction of evidence by [the] defendant designed to disrupt the plaintiff's case, [4] disruption of the plaintiff's case, and [5] damages proximately caused by the defendant's acts"); *Hannah* v. *Heeter*, supra, 213 W. Va. 716 ("[1] pending or probable civil litigation, [2] knowledge of the spoliator that the litigation is pending or probable, [3] willful destruction of evidence, [4] intent of the spoliator to interfere with the victim's prospective civil suit, [5] a causal relationship between the evidence and the inability to prove the lawsuit, and [6] damages" [internal quotation marks omitted]); see also *Rosenblit* v. *Zimmerman*, 166 N.J. 391, 406–407, 766 A.2d 749 (2001) (intentional spoliation of evidence actionable under tort of fraudulent concealment; plaintiff must prove: "[1] [t]hat [the] defendant in the fraudulent concealment action had a legal obligation to disclose evidence in connection with an existing or pending litigation; [2] [t]hat the evidence was material to the litigation; [3] [t]hat [the] plaintiff could not reasonably have obtained access to the evidence from another source; [4] [t]hat [the] defendant intentionally withheld, altered or destroyed the evidence with purpose to disrupt the litigation; [5] [t]hat [the] plaintiff was damaged in the underlying action by having to rely on an evidential record that did not contain the evidence [the] defendant concealed").

(3) in bad faith, that is, with intent to deprive the plaintiff of his cause of action; (4) the plaintiff's inability to establish a prima facie case without the spoliated evidence; and (5) damages.

Home Depot claims, however, that the tort of intentional spoliation of evidence is unworkable and provides an ineffective remedy. Specifically, Home Depot contends that causation and damages would be difficult to prove because "there will typically be no way of telling what precisely the [spoliated] evidence would have shown and how much it would have weighed in the spoliation victim's favor." *Cedars-Sinai Medical Center* v. *Superior Court*, supra, 18 Cal. 4th 14. We agree that this difficulty of proof is "endemic to the tort of spoliation"; (internal quotation marks omitted) *Holmes* v. *Amerex Rent-A-Car*, supra, 710 A.2d 853; but we disagree that it should preclude recognition of the tort. Id. The difficulty in determining the harm caused by a defendant's spoliation of evidence is attributable solely to the defendant's intentional bad faith litigation misconduct. If the plaintiff could establish precisely what the spoliated evidence would have shown, the tort would be unnecessary because the plaintiff would possess sufficient evidence to satisfy his burden of production in the underlying litigation. See id., 850 ("the very purpose of an independent action for spoliation of evidence lies in the inability of the plaintiff to prove proximate causation to the proper degree of certainty required in the underlying suit"). Accordingly, "there would be an inequity in preventing a plaintiff from recovering because of his inability, allegedly caused by the defendant, to prove his underlying case. [T]he most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created." (Internal quotation marks omitted.) Id.; see also *Story Parchment Co.* v. *Paterson Parchment Paper Co.*, 282 U.S.

555, 563, 51 S. Ct. 248, 75 L. Ed. 544 (1931) ("Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts. In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate. The wrongdoer is not entitled to complain that they cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise.").

In light of the difficulties of proof inherent in the tort of intentional spoliation of evidence, we next clarify the plaintiff's burden of proof with respect to causation and damages. To establish proximate causation, the plaintiff must prove that the defendants' intentional, bad faith destruction of evidence rendered the plaintiff unable to establish a prima facie case in the underlying litigation.[13] Cf. *Smith* v. *Atkinson*, 771 So. 2d 429, 434

---

[13] We decline to require the plaintiff to prove some probability of success in the underlying litigation. We note that the jurisdictions that require such a showing do not also require the plaintiff to establish that the defendant's intentional spoliation of evidence was so egregious that the plaintiff was unable to present his case to the fact finder. See, e.g., *Holmes* v. *Amerex Rent-A-Car*, supra, 710 A.2d 852 ("to demonstrate causation, a plaintiff must demonstrate that [1] the underlying claim was significantly impaired due to the spoliation of evidence; [2] a proximate relationship exists between the projected failure of success in the underlying action and the unavailability of the destroyed evidence; and [3] the underlying lawsuit would enjoy a significant possibility of success if the spoliated evidence were still in existence"); *Boyd* v. *Travelers Ins. Co.*, supra, 166 Ill. 2d 196–97 n.2 (to establish causation in negligence action for spoliation, plaintiff must prove that "but for the defendant's loss or destruction of the evidence, [the plaintiff] had a reasonable probability of succeeding on the underlying suit"); *Tomas* v. *Nationwide Mutual Ins. Co.*, 79 Ohio App. 3d 624, 631, 607 N.E.2d 944 ("it would be required to be demonstrated that an effort to pursue the separate civil action was unsuccessful because of the absence of the destroyed evi-

(Ala. 2000) ("in order for a plaintiff to show proximate cause, the trier of fact must determine that the lost or destroyed evidence was so important to the plaintiff's claim in the underlying action that without that evidence the claim did not survive or would not have survived a motion for summary judgment"); *Hannah* v. *Heeter*, supra, 213 W. Va. 714 (same). Once the plaintiff satisfies this burden, "there arises a rebuttable presumption that but for the fact of the spoliation of evidence the plaintiff would have recovered in the pending or potential litigation . . . ." *Smith* v. *Atkinson*, supra, 432–33; see also *Hannah* v. *Heeter*, supra, 717 ("[o]nce the [elements of the tort of intentional spoliation of evidence] are established, there arises a rebuttable presumption that but for the fact of the spoliation of evidence, the party injured by the spoliation would have prevailed in the pending or potential litigation"); cf. *Welsh* v. *United States*, 844 F.2d 1239, 1248 (6th Cir. 1988) ("When, as here, a plaintiff is unable to prove an essential element of her case due to the negligent loss or destruction of evidence by an opposing party, and the proof would otherwise be sufficient to survive a directed verdict, it is proper for the trial court to create a rebuttable presumption that establishes the missing elements of the plaintiff's case that could only have been proved by the availability of the missing evidence. The burden thus shifts to the defendant-spoliator to rebut the presumption and disprove the inferred element of [the] plaintiff's prima facie case."). The defen-

dence or possibly, at the very least, that pursuit of such an action was rendered impossible because of the destruction of evidence"), appeal dismissed, 65 Ohio St. 3d 1485, 604 N.E.2d 1364 (1992). In light of the fact that this state requires the plaintiff to prove a complete inability to litigate his underlying cause of action, it would be impracticable to require the plaintiff to prove a probability of success in that action. Stated another way, because the defendant's intentional spoliation of evidence deprived the plaintiff of sufficient evidence to establish a prima facie case in the underlying litigation, it necessarily deprived the plaintiff of sufficient evidence to demonstrate some probability of success in that litigation.

dant may rebut this presumption by "producing evidence showing that the plaintiff would not have prevailed in the underlying action even if the lost or destroyed evidence had been available." *Smith* v. *Atkinson*, supra, 435. "The [defendant] spoliator must overcome the rebuttable presumption or else be liable for damages." *Hannah* v. *Heeter*, supra, 717.

We next turn to the proper measure of damages. We acknowledge that, "[t]he most difficult aspect of a spoliation of evidence tort is the calculation of damages." (Internal quotation marks omitted.) *Holmes* v. *Amerex Rent-A-Car*, supra, 710 A.2d 852. In determining the proper measure of damages, we are guided by the purpose of compensatory damages, which is "to restore an injured party to the position he or she would have been in if the wrong had not been committed." *Kenny* v. *Civil Service Commission*, 197 Conn. 270, 276, 496 A.2d 956 (1985). To restore a victim of intentional spoliation of evidence to the position he or she would have been in if the spoliation had not occurred, the plaintiff is entitled to recover the full amount of compensatory damages that he or she would have received if the underlying action had been pursued successfully. See *Hannah* v. *Heeter*, supra, 213 W. Va. 715 (full measure of compensatory damages); *Smith* v. *Atkinson*, supra, 771 So. 2d 437–38 (same); see also *Petrik* v. *Monarch Printing Corp.*, supra, 150 Ill. App. 3d 261 ("[a]ssuming that it is impossible to know what the spoliated evidence would have shown, perhaps the plaintiff should be awarded the full measure of damages that he would have obtained had he won the underlying lawsuit").

We recognize that various jurisdictions have criticized this measure of damages because "there is the potential that the plaintiff would benefit more in an instance of spoliation than he might have in the underly-

ing suit."[14] (Internal quotation marks omitted.) *Holmes* v. *Amerex Rent-A-Car*, supra, 710 A.2d 853; *Petrik* v. *Monarch Printing Corp.*, supra, 150 Ill. App. 3d 261. We conclude, however, that the risk of a windfall to the plaintiff sufficiently is minimized by requiring the plaintiff to prove that the defendant spoliated evidence intentionally with the purpose and effect of precluding the plaintiff's ability to establish a prima facie case in the underlying litigation and, further, by permitting the defendant to rebut the presumption of liability that arises upon this showing. Cf. *Smith* v. *Atkinson*, supra, 771 So. 2d 437–38 ("[b]ecause the approach we adopt today to [third party spoliation of evidence] is distinct from the approaches adopted by other [s]tates, observations [concerning a windfall to the plaintiff] fail to consider the additional protection provided [by] . . . the element of a rebuttable presumption that would shift the burden of proof"); *Hannah* v. *Heeter*, supra, 213

---

[14] In *Holmes* v. *Amerex Rent-A-Car*, supra, 710 A.2d 853, the District of Columbia Court of Appeals concluded that the plaintiff's award of damages should be measured by calculating "the damages that would have been obtained in the underlying lawsuit" and multiplying those damages "by the probability that [the] plaintiff would have won the suit had he had the spoliated evidence." (Internal quotation marks omitted.) The court concluded that "[t]his compromise system would apportion [the] risk between the two parties in an equitable fashion. On the one hand, the plaintiff's interest in recovering the expected but precluded sum is protected because recovery is allowed with lower standards of proof for causation and damages. On the other hand, the defendant's interest in only compensating a plaintiff for actual loss is protected because the recovery will be lessened by the uncertainties involved. Both parties, then, accept some of the risk of windfall or shortage necessitated by the uncertainty inherent in proving this tort." Id. The court acknowledged that "[t]he problem with this method is in the difficulty of proving what the spoliated evidence would have demonstrated and the extent to which it would have changed the outcome." (Internal quotation marks omitted.) Id. The court concluded, however, that this problem was insufficient "to overcome the overall fairness of the discounted damages approach." Id. In light of the limited scope of the tort of intentional spoliation of evidence in this state, we are convinced that the plaintiff's inability to demonstrate what the spoliated evidence would have shown is insuperable and, therefore, that the discounted damages approach is unworkable. See footnote 13 of this opinion.

W. Va. 715 (adopting full compensatory damages as measure of damages for reasons articulated in *Smith*). To the extent that some risk of a windfall to the plaintiff persists, we conclude that the defendant should bear this risk in light of its egregious litigation misconduct. See *Petrik* v. *Monarch Printing Corp.*, supra, 261 ("[a]lthough it is true that the plaintiff in a spoliation case would reap a windfall if the underlying suit had no merit, perhaps the intentional destroyer of evidence should bear that risk").

Home Depot next claims that the burdens imposed by the tort of intentional spoliation of evidence outweigh the benefits. Specifically, Home Depot alleges that the tort of intentional spoliation of evidence imposes the following intolerable costs: (1) extraordinary precautions by individuals and businesses to preserve needlessly any evidence that might be relevant to future litigation; (2) meritless spoliation actions clogging the dockets of the courts; (3) where the underlying claim and the spoliation claim are pursued simultaneously, the risk of jury confusion and inconsistency; (4) where the underlying claim and the spoliation claim are pursued separately, the risk of duplicative efforts and potentially inconsistent results. See, e.g., *Cedars-Sinai Medical Center* v. *Superior Court*, supra, 18 Cal. 4th 15 (costs imposed by tort of intentional spoliation of evidence outweigh benefits). We recognize that "[i]mposing liability for consequential damages often creates significant risks of affecting conduct in ways that are undesirable as a matter of policy." (Internal quotation marks omitted.) *Lodge* v. *Arett Sales Corp.*, supra, 246 Conn. 579. We are not persuaded, however, that the costs imposed by the tort of intentional spoliation of evidence exceed the benefits.

First, with respect to the preservation of evidence, we note that the parties to a pending or impending civil action already have a legal duty to retain evidence

relevant to that action under our existing common law and statutory scheme. See footnotes 4, 8 and 10 of this opinion and accompanying text. Thus, the tort of intentional spoliation of evidence does not impose a greater burden to preserve evidence than that which already exists. Second, with respect to the risk of meritless spoliation actions, we do not agree with Home Depot that recognition of the tort will result in an uncontrollable influx of frivolous claims. We conclude that the limited scope of the tort, the difficulty of proof inherent in the tort and the safeguards embodied in our rules of practice; see Rules of Professional Conduct 3.1;[15] are sufficient to deter the filing of such meritless actions. Lastly, the tort of intentional spoliation of evidence, as defined in this state, poses no risk of jury confusion, inconsistent verdicts or duplicative litigation because the underlying claim and the tort of intentional spoliation of evidence are mutually exclusive. In other words, a plaintiff who possesses sufficient evidence to present his underlying claim to the jury necessarily is unable to state a claim for intentional spoliation of evidence, and vice versa. Thus, the risk of jury confusion, inconsistent verdicts or duplicative litigation is eliminated entirely. Accordingly, we conclude that the benefits of the tort of intentional spoliation of evidence, namely, compensating the victims of intentional spoliation and deterring future spoliation, outweigh the minimal burdens imposed by the tort.

For the foregoing reasons, we conclude that this state recognizes the tort of intentional spoliation of evidence. Because the plaintiff's complaint sufficiently states a

---

[15] Rules of Professional Conduct 3.1 provides: "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. A lawyer for the defendant in a criminal proceeding, or the respondent in a proceeding that could result in incarceration, may nevertheless so defend the proceeding as to require that every element of the case be established."

claim for intentional spoliation of evidence; see part I A and footnote 7 of this opinion; we conclude that the trial court improperly granted the defendants' motion to strike the plaintiff's intentional spoliation claim.

## II

Lastly, the plaintiff contends that the trial court improperly denied his request to file a second amended complaint alleging that the defendants' intentional destruction of evidence violated CUTPA. Specifically, the plaintiff claims that the trial court abused its discretion when it concluded that the plaintiff's request was untimely and that the proposed amendment was unsupported by factual allegations. Home Depot responds that the trial court properly denied the plaintiff's request in light of the age of the case, the impending trial, the broad new issues being injected into the case and the plaintiff's unreasonable delay in seeking the amendment. We conclude that the trial court improperly considered the legal sufficiency of the plaintiff's proposed CUTPA claim in ruling on the plaintiff's request to file a second amended complaint. We further conclude, however, that the trial court did not abuse its discretion by denying the plaintiff's request on the grounds of timeliness and prejudice to the defendants.

The following additional procedural history is relevant to our resolution of this claim. On November 25, 2002, the plaintiff filed a request for permission to file a second amended complaint alleging that Home Depot had destroyed evidence as part of a "pattern in practice [of] destroy[ing] critical pieces of evidence that are the subject of litigation against it" in violation of CUTPA. On December 6, 2002, the defendants objected to the plaintiff's request, claiming that the proposed amendment was legally deficient because the plaintiff had failed to allege any facts in support of the CUTPA claim. On February 5, 2003, the defendants filed a supplemen-

tal objection to the plaintiff's request, claiming that the proposed amendment was untimely and would be unduly prejudicial to the defendants.

Thereafter, in February, 2003, the law firms that had represented both defendants jointly withdrew their appearances on the ground of a conflict of interest,[16] and both Home Depot and Davidson obtained separate counsel. On February 20, 2003, Home Depot filed a motion to withdraw the December 6, 2002 objection to the plaintiff's request to file an amended complaint, and the February 5, 2003 supplemental objection, both of which had been filed by predecessor counsel. On that same date, Home Depot also filed a new objection to the plaintiff's request, claiming: "(1) the granting of the proposed amendment would unfairly prejudice Home Depot and unnecessarily delay the trial of this matter; (2) any necessity to amend the [c]omplaint at this late date is due solely to [the] plaintiff's own neglect as opposed to any newly discovered facts; (3) the proposed amendment [seeking] to add a new count for violation of [CUTPA] is barred by the applicable statute of limitations or the exclusivity provisions of Connecticut's Product Liability Act; and (4) the proposed amendment seeking to add a new count for CUTPA is legally insufficient."

Meanwhile, the trial, which originally had been scheduled for April 30, 2001, but was postponed to February 18, 2002, was continued to March 19, 2003. On January

---

[16] Specifically, counsel for the defendants stated that "Home Depot tendered the defense of this matter to Davidson . . . and that tender was conditionally accepted. . . . A condition of the acceptance of the tender was that Davidson . . . would not defend and indemnify Home Depot against allegations of independent legal fault on the part of Home Depot. Subsequent developments in this case since that tender of defense was initially accepted require that Home Depot have separate counsel to defend its interests with respect to Count III [alleging intentional spoliation of evidence] and proposed Count IV [alleging a violation of CUTPA] of the Amended Complaint."

28, 2003, the defendants moved for a continuance because trial counsel was unavailable.[17] The plaintiff objected to the motion, and the trial court, *Sheedy, J.,* denied the motion because of the age of the case.

On February 24, 2003, the trial court, *Doherty, J.,* heard oral arguments on the defendants' objection to the plaintiff's request to file a second amended complaint. The plaintiff claimed that the proposed amendment was timely because it was filed immediately after he discovered that Home Depot had a pattern and practice of intentionally destroying evidence relevant to pending litigation.[18] The plaintiff further argued that the defendants would not suffer any undue prejudice because the proposed amendment had been pending since November, 2002. Finally, the plaintiff claimed that if the court concluded that the proposed amendment was untimely, the CUTPA count should be severed from the other issues and tried separately.

On March 19, 2003, the date that trial was scheduled to commence, the trial court sustained the defendants' objection. The plaintiff moved to reargue his request and, on April 10, 2003, the trial court denied the plaintiff's motion. Thereafter, the trial court rendered judgment in favor of the defendants, and the plaintiff appealed from the judgment of the trial court to the Appellate Court. On November 17, 2003, the plaintiff

---

[17] The record does not reflect the reason for trial counsel's unavailability. Home Depot represents in its brief to this court, however, that "the defendants moved to continue the trial because counsel for both defendants was withdrawing from the case, due to a conflict of interest, and new counsel for both defendants were entering appearances."

[18] Specifically, the plaintiff stated that "[i]t was not until October of . . . 2002 that [the] plaintiff's counsel, and this is my representation on the record, that [the] plaintiff's counsel learned that Home Depot had been accused by many counsel and many different plaintiffs of destroying other pieces of evidence from accidents occurring at the Home Depot facility in Norwalk and other places and that they had just entered into a confidential settlement of a major case involving the destruction of evidence at the . . . Norwalk facility."

moved the Appellate Court to order the trial court to articulate its reasons for sustaining the defendants' objection. The Appellate Court granted the motion and, on December 17, 2004, the trial court issued an articulation, explaining that it had sustained the defendants' objection because the plaintiff's proposed CUTPA claim was unsupported by factual allegations and was "so untimely as to be unfair and prejudicial to the defendants . . . ."[19]

"Our standard of review of the plaintiff's claim is well settled. While our courts have been liberal in permitting amendments . . . this liberality has limitations. Amendments should be made seasonably. Factors to be considered in passing on a motion to amend are the length of the delay, fairness to the opposing parties and the negligence, if any, of the party offering the amendment. . . . The motion to amend is addressed to the trial court's discretion which may be exercised to restrain the amendment of pleadings so far as necessary to prevent unreasonable delay of the trial. . . . Whether to allow an amendment is a matter left to the sound discretion of the trial court. This court will not disturb a trial court's ruling on a proposed amendment unless there has been a clear abuse of that discretion. . . . It is the [plaintiff's] burden in this case to demonstrate that the trial court clearly abused its discretion."

[19] The trial court stated: "The court sustained the defendants' objection to the proposed amended complaint of November 25, 2002, for the reason that it contained allegations of habitual destruction of evidence by . . . Home Depot which were totally unsupported by any facts, as required by law, as set forth in *Smith* v. *Furness*, [117 Conn. 97, 99, 166 A. 759 (1933)]. The court also found that regardless of the fact that the request to amend had been pending since November 25, 2002, it was only then coming before the court for consideration virtually on the eve of trial.

"The court denied the plaintiff's motion to amend to add a fourth count alleging CUTPA violations because it was 'defective in alleging a conclusion without facts to support it,' and, further, because it was so untimely as to be unfair and prejudicial to the defendants in view of the fact that a jury was about to be selected the day the motion to amend came before the court."

(Internal quotation marks omitted.) *Dow & Condon, Inc.* v. *Brookfield Development Corp.*, 266 Conn. 572, 583–84, 833 A.2d 908 (2003).

The plaintiff first claims that the trial court improperly denied his request to file a second amended complaint on the ground that the proposed CUTPA claim was unsupported by factual allegations. Specifically, the plaintiff claims that "requests to amend cannot be denied based on the sufficiency of the proposed complaint." We agree. The proper procedural vehicle to challenge the legal sufficiency of a proposed pleading is a motion to strike, rather than an objection to a motion to amend. See Practice Book § 10-39.[20] Thus, even if a proposed pleading is alleged to be insufficient, a "plaintiff should be permitted to file [the amended pleading], so that the issues arising under it may be determined in proceedings properly adapted to that

[20] Practice Book § 10-39 (a) provides: "Whenever any party wishes to contest (1) the legal sufficiency of the allegations of any complaint, counterclaim or cross claim, or of any one or more counts thereof, to state a claim upon which relief can be granted, or (2) the legal sufficiency of any prayer for relief in any such complaint, counterclaim or cross complaint, or (3) the legal sufficiency of any such complaint, counterclaim or cross complaint, or any count thereof, because of the absence of any necessary party or, pursuant to Section 17-56 (b), the failure to join or give notice to any interested person, or (4) the joining of two or more causes of action which cannot properly be united in one complaint, whether the same be stated in one or more counts, or (5) the legal sufficiency of any answer to any complaint, counterclaim or cross complaint, or any part of that answer including any special defense contained therein, that party may do so by filing a motion to strike the contested pleading or part thereof."

We note that, if the trial court had struck the plaintiff's CUTPA claim pursuant to Practice Book § 10-39, the plaintiff would have been entitled to file a new complaint alleging additional facts in support of his claim. See Practice Book § 10-44 ("[w]ithin fifteen days after the granting of any motion to strike, the party whose pleading has been stricken may file a new pleading"). We need not decide in this appeal whether any further specificity was required of the plaintiff in pleading his CUTPA claim. We point out, however, that, because the trial court simply denied the plaintiff's request to amend, the plaintiff was deprived of the opportunity to replead his CUTPA claim with specificity.

end." *Newman* v. *Golden,* 108 Conn. 676, 680, 144 A. 467 (1929) (trial court improperly denied plaintiff's motion to file substitute pleading on ground that proposed pleading failed to state claim); see also *Smith* v. *Furness,* 117 Conn. 97, 100, 166 A. 759 (1933) ("[w]e go no farther . . . than to point out that it was error for the trial court to refuse to permit [the amended pleading] to be filed upon the ground that the facts stated in it would not legally constitute a defense"). Accordingly, we conclude that the trial court abused its discretion by denying the plaintiff's request to file an amended complaint on the ground that the proposed CUTPA claim was unsupported by factual allegations.

The plaintiff next claims that the trial court improperly denied his request to file an amended complaint on the ground that the proposed amendment was untimely. We are not persuaded. The plaintiff discovered Home Depot's destruction of evidence in 1999, but did not seek to allege a violation of CUTPA until November, 2002, at which point the trial was only four months away.[21] The proposed amendment would have injected new and complex legal issues into the litigation concerning the scope and applicability of CUTPA and, moreover, would have required additional discovery concerning Home Depot's alleged "pattern [and] practice" of destroying evidence in other cases. Moreover, the trial date had been continued repeatedly for approximately two years, and the plaintiff himself had objected to any further delays. Because the trial court reasonably could have concluded that granting the plaintiff's

---

[21] The plaintiff claims that he could not have asserted a violation of CUTPA prior to November, 2002, because he did not discover Home Depot's pattern and practice of destroying evidence until October of that year. See footnote 18 of this opinion. We reject this claim because the plaintiff did not allege, and the trial court was not compelled to conclude, that the information pertaining to Home Depot's alleged pattern and practice would have been unavailable to the plaintiff prior to October, 2002, if the plaintiff had attempted to seek it.

request to file a second amended complaint would have delayed the trial and prejudiced the defendants,[22] the trial court did not abuse its discretion by denying the plaintiff's request.[23] See *AirKaman, Inc.* v. *Groppo*, 221 Conn. 751, 767, 607 A.2d 410 (1992) (trial court did not abuse discretion by denying request to amend complaint where pleadings had been closed, opposing party had submitted trial brief and claim would require additional discovery), superseded by statute on other grounds as stated in *Renaissance Management Co.* v. *Commissioner of Revenue Services*, 48 Conn. Sup. 221, 838 A.2d 260 (2002), aff'd, 267 Conn. 188, 836 A.2d 1180 (2003); *Connecticut National Bank* v. *Douglas*, 221 Conn. 530, 548, 606 A.2d 684 (1992) (trial court did not abuse discretion by denying request to amend that was filed approximately two weeks before trial and "would have added lengthy new allegations of fact and law"); *Beckman* v. *Jalich Homes, Inc.*, 190 Conn. 299, 303, 460 A.2d 488 (1983) (trial court did not abuse discretion by denying request to amend that was filed day before trial and would have added new bases of liability).

The judgment is reversed with respect to the claim of spoliation of evidence and the case is remanded to

---

[22] The plaintiff claims that the trial court improperly considered the defendants' belated claim of prejudice in ruling on the plaintiff's request to file a second amended complaint. We reject this claim because it is well established that prejudice to the opposing party is one of the factors that a trial court should consider in ruling on a motion to file an amended pleading. See, e.g., *Dow & Condon, Inc.* v. *Brookfield Development Corp.*, supra, 266 Conn. 583 ("[f]actors to be considered in passing on a motion to amend are the length of the delay, fairness to the opposing parties and the negligence, if any, of the party offering the amendment" [internal quotation marks omitted]).

[23] Although we affirm the judgment of the trial court denying the plaintiff's request to file a second amended complaint, nothing herein should be construed to preclude the plaintiff from seeking to amend his complaint in the future, given that a trial date no longer is imminent and the trial court must conduct further proceedings on the plaintiff's intentional spoliation of evidence claim.

the trial court with direction to deny the motion to strike as to that claim and for further proceedings according to law; the judgment is affirmed in all other respects.

In this opinion NORCOTT, PALMER and VERTE-FEUILLE, Js., concurred.

PALMER, J., concurring. I join the majority opinion. I write separately simply to note that there is a way to achieve the result that the majority reaches without creating a new tort of intentional spoliation of evidence. That approach would be to extend our holding in *Beers* v. *Bayliner Marine Corp.*, 236 Conn. 769, 675 A.2d 829 (1996), to provide that a plaintiff may invoke the *Beers* adverse inference to satisfy his or her burden of production upon proof merely that the defendant had destroyed the evidence in bad faith, that is, with intent to deprive the plaintiff of his or her cause of action. Although I believe that such a modification of *Beers* would satisfy the concerns addressed by the majority, the plaintiff in the present action has not sought that remedy; indeed, the plaintiff has withdrawn his product liability claims, and, therefore, an extension of *Beers* in the manner suggested would not avail the plaintiff. In light of the procedural history of this case, and because I agree with the plaintiff that the currently available remedies for intentional, bad faith spoliation of evidence are inadequate, I join the majority opinion.

SULLIVAN, C. J., dissenting. I disagree with part I B of the majority opinion, in which the majority concludes that this state should recognize a tort for intentional first party spoliation of evidence when, as a result of the spoliation, the plaintiff is unable to establish a prima facie case in the underlying action. The majority concludes that recognition of this tort is necessary to compensate victims of spoliation and to deter future

spoliation. I would conclude that existing remedies are sufficient to deter and punish acts of spoliation and that it is against public policy to provide compensation for damages when liability cannot be established.

The majority of jurisdictions that have considered whether to recognize a tort for first party spoliation of evidence have concluded that such claims are not cognizable.[1] The California Supreme Court's analysis in

---

[1] See *Christian* v. *Kenneth Chandler Construction Co.*, 658 So. 2d 408, 413 (Ala. 1995); *Goff* v. *Harold Ives Trucking Co.*, 342 Ark. 143, 150, 27 S.W.3d 387 (2000); *Cedars-Sinai Medical Center* v. *Superior Court*, 18 Cal. 4th 1, 17, 954 P.2d 511, 74 Cal. Rptr. 2d 248 (1998); *Lucas* v. *Christiana Skating Center, Ltd.*, 722 A.2d 1247, 1249–50 (Del. Super. 1998); *Martino* v. *Wal-Mart Stores, Inc.*, 908 So. 2d 342, 347 (Fla. 2005); *Gardner* v. *Blackston*, 185 Ga. App. 754, 755, 365 S.E.2d 545 (1988); *Gribben* v. *Wal-Mart Stores, Inc.*, 824 N.E.2d 349, 355 (Ind. 2005); *Meyn* v. *State*, 594 N.W.2d 31, 33–34 (Iowa 1999) (refusing to recognize negligent spoliation of evidence as independent tort where spoliation caused by third party and stating in dicta that first party claim also is not cognizable); *Monsanto Co.* v. *Reed*, 950 S.W.2d 811, 815 (Ky. 1997); *Miller* v. *Montgomery County*, 64 Md. App. 202, 214–15, 494 A.2d 761, cert. denied, 304 Md. 299, 498 A.2d 1185 (1985); *Fletcher* v. *Dorchester Mutual Ins. Co.*, 437 Mass. 544, 553, 773 N.E.2d 420 (2002); *Dowdle Butane Gas Co.* v. *Moore*, 831 So. 2d 1124, 1135 (Miss. 2002); *Oliver* v. *Stimson Lumber Co.*, 297 Mont. 336, 345, 993 P.2d 11 (1999); *Timber Tech Engineered Building Products* v. *Home Ins. Co.*, 118 Nev. 630, 632–33, 55 P.3d 952 (2002); *Trevino* v. *Ortega*, 969 S.W.2d 950, 951 (Tex. 1998); *Johnston* v. *Metropolitan Property & Casualty Ins. Co.*, 288 Wis. 2d 658, 707 N.W.2d 579 (2005).

A number of courts have concluded that spoliation of evidence is not a cognizable tort per se but may be actionable under other theories. See *Boyd* v. *Travelers Ins. Co.*, 166 Ill. 2d 188, 194, 652 N.E.2d 267 (1995) (claim for spoliation of evidence can be stated under existing negligence law); *Rosenblit* v. *Zimmerman*, 166 N.J. 391, 406, 766 A.2d 749 (2001) (recognizing intentional spoliation of evidence claim as form of fraudulent concealment); *Weigl* v. *Quincy Specialties Co.*, 158 Misc. 2d 753, 756–57, 601 N.Y.S.2d 774 (1993) (New York does not recognize spoliation of evidence as independent tort, but does recognize common-law action for negligently or intentionally impairing right to bring action against tortfeasor).

A number of courts have recognized first party spoliation of evidence as an independent tort. See *Hazen* v. *Anchorage*, 718 P.2d 456, 463 (Alaska 1986); *Holmes* v. *Amerex Rent-A-Car*, 180 F.3d 294, 296 (D.C. Cir. 1999) (under District of Columbia law, negligent or reckless spoliation of evidence is independent tort); *Smith* v. *Howard Johnson Co.*, 67 Ohio St. 3d 28, 29, 615 N.E.2d 1037 (1993); *Hannah* v. *Heeter*, 213 W. Va. 704, 715, 584 S.E.2d

*Cedars-Sinai Medical Center* v. *Superior Court*, 18 Cal.
4th 1, 8, 954 P.2d 511, 74 Cal. Rptr. 2d 248 (1998), is
typical of these cases. The court in that case recognized
that the crux of the question before it was "whether a
tort remedy for the intentional first party spoliation of
evidence would ultimately create social benefits
exceeding those created by existing remedies for such
conduct, and outweighing any costs and burdens it
would impose." Id.; see also *Perodeau* v. *Hartford*, 259
Conn. 729, 759, 792 A.2d 752 (2002) (balancing social
costs against social benefits in considering whether to
recognize tort of negligent infliction of emotional dis-
tress in ongoing employment context). The court noted
that "[t]hree concerns in particular stand out here: the
conflict between a tort remedy for intentional first party
spoliation and the policy against creating derivative tort
remedies for litigation-related misconduct; the strength
of existing nontort remedies for spoliation; and the
uncertainty of the fact of harm in spoliation cases."
*Cedars-Sinai Medical Center* v. *Superior Court*,
supra, 8.

After reviewing the cases in which it repeatedly had
refused to create new torts to remedy litigation related
misconduct; id., 9; and the existing nontort remedies for
spoliation, including evidentiary inferences, discovery
sanctions, procedural sanctions, attorney disciplinary
sanctions, and criminal penalties; id., 11–13; the Califor-
nia court concluded that "existing remedies are gener-
ally effective at deterring spoliation." Id., 13. The court
also concluded that "in a substantial proportion of spoli-
ation cases the fact of harm will be irreducibly uncer-

560 (2003) (recognizing intentional spoliation of evidence as independent
tort when spoliation done by party to civil action or by third party); see
also *Coleman* v. *Eddy Potash, Inc.*, 120 N.M. 645, 649, 905 P.2d 185 (1995)
(recognizing intentional spoliation of evidence claim against third party and
not distinguishing between first party and third party claims), overruled on
other grounds by *Delgado* v. *Phelps Dodge Chino, Inc.*, 131 N.M. 272, 34
P.3d 1148 (2001).

tain." Id. " 'It would seem to be sheer guesswork, even presuming that the destroyed evidence went against the spoliator, to calculate what it would have contributed to the plaintiff's success on the merits of the underlying lawsuit. . . . The lost evidence may have concerned a relevant, but relatively trivial matter. If evidence would not have helped to establish [the] plaintiff's case an award of damages for its destruction would work a windfall for the plaintiff.' " Id., 14, quoting *Petrik* v. *Monarch Printing Corp.*, 150 Ill. App. 3d 248, 260–61, 501 N.E.2d 1312 (1986). Accordingly, the court concluded that, although "the intentional spoliation of evidence by a party to the litigation to which it is relevant is an unqualified wrong . . . it is the rare case in which a tort remedy for an intentionally caused harm is not appropriate." *Cedars-Sinai Medical Center* v. *Superior Court*, supra, 18 Cal. 4th 17.

Like California, Connecticut disfavors derivative torts.[2] In addition, in Connecticut, as in California, the

[2] See *Larobina* v. *McDonald*, 274 Conn. 394, 408, 876 A.2d 522 (2005) (allowing separate abuse of process claim against party to pending litigation "could subject the courts to a flood of . . . duplicative claims and effectively chill the vigorous representation of clients by their attorneys"); id., 409 (allowing separate civil conspiracy claim arising from alleged misconduct by party to pending litigation would "undermine an orderly and efficient judicial process and would potentially lead to inconsistent verdicts"); id., 411 (allowing negligent infliction of emotional distress claim arising from alleged misconduct by party to pending litigation "would subject the courts to a flood of collateral actions arising from aggressive litigation tactics and would effectively chill the vigorous representation of clients by their attorneys"). We also repeatedly have recognized the general public policy against increased litigation. See *Perodeau* v. *Hartford*, supra, 259 Conn. 756–57; *Jaworski* v. *Kiernan*, 241 Conn. 399, 407, 696 A.2d 332 (1997); see also *Ward* v. *Greene*, 267 Conn. 539, 558, 839 A.2d 1259 (2004) ("Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree." [Internal quotation marks omitted.]). In addition, this court, like the California court, repeatedly has recognized the "judicial policy in favor of judicial economy, the stability of former judgments and finality." (Internal quotation marks omitted.) *DaCruz* v. *State Farm Fire & Casualty Co.*, 268 Conn. 675, 686, 846 A.2d 849 (2004).

rules of evidence, procedure and attorney conduct and the criminal law provide a wide range of sanctions for spoliation. The majority does not dispute these facts and, indeed, apparently accepts the reasoning of the court in *Cedars-Sinai Medical Center* as it applies to cases in which the plaintiff is the spoliator or in which the defendant is the spoliator and the plaintiff can establish a prima facie case in the underlying action. The majority concludes, however, that when a plaintiff is unable to meet his burden of production as a result of the defendant's bad faith destruction of evidence, the plaintiff should be able to bring a spoliation action against the defendant. I disagree.

As a preliminary matter, I note that there simply is no need to reach this issue in the present case because, contrary to the majority's statement, the plaintiff, Leandro Rizzuto, has not alleged that he was unable to make a prima facie case in his product liability action as the result of the destruction of the ladder by the defendants, Davidson Ladders, Inc.,[3] and Home Depot, Inc. Rather, the plaintiff alleged in his complaint that his "case has been damaged to the point where no expert can *conclusively* establish the mechanism of the defect which caused the plaintiff's injuries" and, therefore, he *"may* not be able to prove his case . . . ."[4] (Emphasis added.)

---

[3] After the briefs were filed in this appeal, the plaintiff withdrew his claims against Davidson Ladders, Inc., which is no longer a party to this appeal.

[4] The majority also states that it is required to assume at this stage of the proceedings that the plaintiff's purported factual allegation that he could not make out a prima facie case in the product liability action is true. See *Cotto* v. *United Technologies Corp.*, 251 Conn. 1, 42, 738 A.2d 623 (1999) (in ruling on motion to strike "the facts alleged in the plaintiff's complaint must be taken to be true"). It is well established, however, that whether the plaintiff has made out a prima facie case is a question of law, not of fact. See *DiStefano* v. *Milardo*, 276 Conn. 416, 422, 886 A.2d 415 (2005).

It is arguable that, if the plaintiff had brought *only* a spoliation action, this court could assume the truth of any allegations made in that action about the underlying action. In the present case, however, the allegations of the underlying action are before us. Assuming the truth of *those* allegations, the plaintiff clearly, as a matter of law, has made out a prima facie case of product liability.

Similarly, in his memorandum in opposition to the defendants' motion to strike the spoliation claims, the plaintiff did not suggest that he was unable to make out a prima facie case, but argued only that, under *Beers* v. *Bayliner Marine Corp.*, 236 Conn. 769, 675 A.2d 829 (1996), if a *hypothetical* plaintiff were unable to establish a prima facie case, then that plaintiff would have no remedy.[5] It is hardly surprising that the plaintiff failed either to allege or to argue to the trial court that he could not make out a prima facie case because: (1) he has never argued that the tort of first party intentional spoliation should be limited to cases in which the plaintiff cannot meet his burden of production; and (2) no court that I am aware of has imposed such a limitation on the tort.[6] More importantly, this court and numerous

---

[5] The majority also points out that the plaintiff claimed in its memorandum in opposition to the defendants' motion to strike that "the defendants had destroyed the ladder in bad faith . . . ." The language relied on by the majority states in full: "Moreover, the [c]ourt [in *Beers* v. *Bayliner Marine Corp.*, supra, 236 Conn. 777 n.11] expressly stated that it was leaving for another day the appropriate remedy where a party destroys evidence in bad faith, as is alleged here." The plaintiff's amended complaint, however, alleged no such thing. I recognize that this court reads pleadings " 'broadly and realistically.' " *DiLieto* v. *County Obstetrics & Gynecology Group, P.C.*, 265 Conn. 79, 104, 828 A.2d 31 (2003). "That does not mean, however, that [we are] obligated to read into pleadings factual allegations that simply are not there . . . ." *Pane* v. *Danbury*, 267 Conn. 669, 677, 841 A.2d 684 (2004).

[6] The majority relies on *Smith* v. *Atkinson*, 771 So. 2d 429, 434 (Ala. 2000), and *Hannah* v. *Heeter*, 213 W. Va. 704, 714, 584 S.E.2d 560 (2003), in support of its conclusion that the plaintiff must be incapable of establishing even a prima facie case in his underlying action in order to bring a claim for first party intentional spoliation of evidence. See *Smith* v. *Atkinson*, supra, 434 ("in order for a plaintiff to show proximate cause, the trier of fact must determine that the lost or destroyed evidence was so important to the plaintiff's claim in the underlying action that without that evidence the claim did not survive or would not have survived a motion for summary judgment"); *Hannah* v. *Heeter*, supra, 714 (same). I would first note that the portions of those cases cited by the majority involved third party spoliation actions, in which evidentiary presumptions and rules governing litigation procedure, discovery and attorney conduct provide no deterrence to the destruction of evidence. Accordingly, the arguments for recognizing a tort for third party spoliation of evidence are much stronger than those in favor of recognizing a first party tort.

other courts have recognized that, in a product liability lawsuit, the destruction of the allegedly defective product does not necessarily prevent the plaintiff from proving his case. See id., 778 ("the spoliation of a machine may raise an adverse inference with respect to a claim that that particular machine was defective"); *Miller* v. *Allstate Ins. Co.*, 650 So. 2d 671, 674 (Fla. App. 1995) (evidence that product malfunctioned during normal operation constitutes prima facie case that product was defective); see also *Beil* v. *Lakewood Engineering & Mfg. Co.*, 15 F.3d 546, 553 (6th Cir 1994) (reversing District Court's granting of summary judgment in favor of defendant on ground that plaintiff had destroyed evidence because, in product liability case based on design defect, plaintiff can demonstrate design defect without specific product); *Columbian Rope Co.* v. *Todd,*

---

Second, it is not entirely clear to me that the court in *Smith* was limiting spoliation claims to those in which the plaintiff could not establish a prima facie case in the underlying action. Rather, *Smith* may be interpreted as concluding only that, if an underlying action cannot survive a motion for summary judgment, then the plaintiff may bring a third party spoliation action. In reaching that conclusion, the court was rejecting the defendant's argument that, in order to bring an action for third party spoliation, the plaintiff first must bring the underlying action and be denied recovery. *Smith* v. *Atkinson*, supra, 771 So. 2d 434. Thus, it is arguable that the court did *not* conclude that, if the underlying action was capable of surviving a motion for summary judgment, but judgment ultimately was entered against the plaintiff, a third party spoliation action was precluded. See id. ("[t]he plaintiff can rely upon *either* a copy of a judgment against him in an underlying action *or* upon a showing that, without the lost or destroyed evidence, a summary judgment would have been entered for the defendant in the underlying action" [emphasis added]).

In *Hannah*, the court relied entirely on *Smith* in stating that the plaintiff may rely on either a judgment against him in the underlying action or a showing that, without the lost evidence, summary judgment would have been entered for the defendant in the underlying action. Again, it is not entirely clear that the court in *Hannah* was limiting spoliation claims to those in which the plaintiff could not establish a prima facie case in the underlying action. Moreover, the court in *Hannah* discusses this requirement in the context of the tort of third party negligent spoliation of evidence and does not restate or refer to this language in the section discussing the tort of first party intentional spoliation of evidence.

631 N.E.2d 941, 944 (Ind. App. 1994) (when plaintiff claimed design defect in rope and then lost rope, testimony of plaintiff's expert witness based on exemplar rope was admissible).

In my view, evidence that the ladder collapsed when the plaintiff stood on it, together with evidence that the defendants intentionally destroyed the ladder, clearly would be sufficient to support an inference under *Beers* that physical examination of the ladder would have been unfavorable to the defendants. See *Beers* v. *Bayliner Marine Corp.*, supra, 236 Conn. 775. It is also possible that the plaintiff could demonstrate that the ladder was defective by using exemplar ladders. It is ironic that, although the majority opinion purportedly is premised on the unfairness to the plaintiff of disallowing a claim for spoliation, the majority not only fails to view the plaintiff's product liability action in the light most favorable to him, but takes precisely the opposite tack. I cannot fathom why the majority is so eager to adopt a new tort for first party intentional spoliation of evidence—in a form that no other jurisdiction in the country has recognized—that it is willing to distort the record to suggest that the plaintiff in the present case could meet the elements of that tort.

Even if this were an appropriate case for this court to consider adopting the tort in the form proposed by the majority, however, I would conclude that we should not do so. First, although the majority purports to rely on this court's decision in *Beers* as mandating the recognition of an independent tort for intentional spoliation, its decision is entirely inconsistent with that case. We stated in *Beers* that the inference that destroyed evidence would have been unfavorable to the spoliator "does not supply the place of evidence of material facts and does not shift the burden of proof so as to relieve the party upon whom it rests of the necessity of estab-

lishing a prima facie case . . . ."[7] (Internal quotation marks omitted.) Id., 779. The majority now concludes that, because the *Beers* inference is not available when the plaintiff has failed to make out a prima facie case, a plaintiff who cannot do so must receive something much more valuable, namely, the benefit of a *rebuttable presumption* that he would have *prevailed* if not for the destruction of the evidence. The majority attempts to justify this departure from *Beers* by pointing out that we specifically stated in that case that we were leaving "to another day the determination of the appropriate

[7] Citing *Doty* v. *Wheeler*, 120 Conn. 672, 679, 182 A. 468 (1936) (same); *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 675–76, 165 A.2d 598 (1960) (rule that jury can draw adverse inference from party's failure to produce witness does not apply until opposing party has made out prima facie case), overruled on other grounds by *State* v. *Malave*, 250 Conn. 722, 737 A.2d 442 (1999) (en banc), cert. denied, 528 U.S. 1170, 120 S. Ct. 1195, 145 L. Ed. 2d 1099 (2000); *Larsen* v. *Romeo*, 254 Md. 220, 228, 255 A.2d 387 (1969) (adverse inference does not amount to substantive proof and cannot take place of proof of fact necessary to other party's case); *DiLeo* v. *Nugent*, 88 Md. App. 59, 71, 592 A.2d 1126 (adverse inference that destroyed evidence would have been unfavorable does not in itself amount to substantive proof that evidence was unfavorable), cert. granted, 325 Md. 18, 599 A.2d 90 (1991), appeal dismissed, 327 Md. 627, 612 A.2d 257 (1992); *Burkowske* v. *Church Hospital Corp.*, 50 Md. App. 515, 523–24, 439 A.2d 40 (1982) (same), overruled on other grounds by *B&K Rentals & Sales Co.* v. *Universal Leaf Tobacco Co.*, 324 Md. 147, 596 A.2d 640 (1991); *Jakel* v. *Brockelman Bros., Inc.*, 91 N.H. 453, 455, 21 A.2d 155 (1941) (proof of alleged suppression of evidence cannot take place of proof of facts necessary to recovery); *F.R. Patch Mfg. Co.* v. *Protection Lodge No. 215, International Assn. of Machinists*, 77 Vt. 294, 329, 60 A. 74 (1905) (inference "does not relieve the other party from introducing evidence tending affirmatively to prove his case so far as he has the burden"); *Jones* v. *Lamm*, 193 Va. 506, 510–11, 69 S.E.2d 430 (1952) (fact that evidence was destroyed by defendant is not proof of primary negligence of defendant even if it is assumed that such destruction was intentional); *Jagmin* v. *Simonds Abrasive Co.*, 61 Wis. 2d 60, 81, 211 N.W.2d 810 (1973) (where destruction of evidence gives rise to adverse inference, inference cannot carry other party's burden of proof); see also C. Tait, Connecticut Evidence (3d Ed. 2001) § 4.3.2 ("[N]egative inferences cannot supply proof of any particular fact. Accordingly, negative inferences do not help a party to establish a prima facie case and can be used only by the trier in weighing the evidence and determining the ultimate burden of persuasion.").

remedy when the spoliator's intent had been to perpetrate a fraud . . . ." Id., 777 n.11. Nothing in *Beers*, however, remotely suggests that, in direct contradiction to the limitation on the adverse inference that we expressly adopted in that case, and to the well established evidentiary principles and public policy considerations underlying that limitation, we might in a future case require the trial court to create a rebuttable presumption that the plaintiff would have prevailed if not for the destruction of the evidence when, and only when, the destruction of the evidence prevents the plaintiff from establishing a prima facie case.

The public policy considerations underlying *Beers* were explained in *Cedars-Sinai Medical Center*. In that case, the California court pointed out that, when a plaintiff is unable to present evidence in support of his underlying action, "the fact of harm will be irreducibly uncertain. In such cases, even if the jury infers from the act of spoliation that the spoliated evidence was somehow unfavorable to the spoliator, there will typically be no way of telling what precisely the evidence would have shown and how much it would have weighed in the spoliation victim's favor. Without knowing the content and weight of the spoliated evidence, it would be impossible for the jury to meaningfully assess what role the missing evidence would have played in the determination of the underlying action. The jury could only speculate as to what the nature of the spoliated evidence was and what effect it might have had on the outcome of the underlying litigation." *Cedars-Sinai Medical Center* v. *Superior Court*, supra, 18 Cal. 4th 13–14; see also *Goff* v. *Harold Ives Trucking Co.*, 342 Ark. 143, 149, 27 S.W.3d 387 (2000) (same); *Gribben* v. *Wal-Mart Stores, Inc.*, 824 N.E.2d 349, 354–55 (Ind. 2005) (same); *Federated Mutual Ins. Co.* v. *Litchfield Precision Components, Inc.*, 456 N.W.2d 434, 439 (Minn. 1990) (declining to recognize tort for first party

spoliation of evidence in absence of evidence that plaintiff would have prevailed in underlying action if evidence had not been destroyed because, not only extent, but also existence of harm was purely speculative). When the plaintiff is unable even to establish a prima facie case, these principles apply all the more strongly.

In support of its conclusion that the irreducible uncertainty of harm does not militate against adopting a tort for first party intentional spoliation of evidence when the plaintiff cannot establish a prima facie case, the majority relies on *Holmes* v. *Amerex Rent-A-Car*, 710 A.2d 846, 853 (D.C. 1998), and *Story Parchment Co.* v. *Paterson Parchment Paper Co.*, 282 U.S. 555, 563, 51 S. Ct. 248, 75 L. Ed. 544 (1931). In *Holmes*, the court stated that "there would be an inequity in preventing a plaintiff from recovering because of his inability, allegedly caused by the defendant, to prove his underlying case. [T]he most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created." (Internal quotation marks omitted.) *Holmes* v. *Amerex Rent-A-Car*, supra, 850. In *Story Parchment Co.*, the court stated that "[w]here the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts. In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate. The wrongdoer is not entitled to complain that they cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were other-

wise." (Internal quotation marks omitted.) *Story Parchment Co.* v. *Paterson Parchment Paper Co.*, supra, 563.

In *Story Parchment Co.*, however, the court specifically found that the evidence at trial supported a finding that the defendant unlawfully had interfered with the plaintiff's business and that the interference had injured the plaintiff. Id., 560. Only the amount of damages was uncertain. Id., 561. In *Holmes*, the court held that, in order to receive damages, the plaintiff was required to prove at least that it "enjoyed a significant possibility of success" in the underlying claim. *Holmes* v. *Amerex Rent-A-Car*, supra, 710 A.2d 852. In contrast, in the present case, the majority would allow the recovery of damages only in cases where the plaintiff cannot even make a prima facie case of liability in the underlying action. Thus, "the issue [here] is proof of the *existence*, not merely the *extent*, of an injury." (Emphasis added.) *Federated Mutual Ins. Co.* v. *Litchfield Precision Components, Inc.*, supra, 456 N.W.2d 438. Because the reasoning of the court in *Story Parchment Co.* does not apply when there is no evidence of causation, I believe that the majority's reliance on that case is entirely misplaced.

The majority may respond, however, that under the version of the tort that it adopts, the plaintiff must prove that the defendant caused an injury because he must establish that the defendant destroyed the evidence in bad faith, i.e., with an intent to deprive the plaintiff of his cause of action. This is mere sleight of hand. The majority cannot, simply by conjuring up a new derivative tort in which the element of bad faith substitutes for the element of causation, change the basic fact that any finding of liability and damages without a finding that the injury was in fact caused by the defendant must

be entirely speculative. Bad faith, in and of itself, cannot injure anyone.[8]

The majority engages in a similar sleight of hand when it concludes that the plaintiff is entitled to the full amount of his damages. The majority implicitly argues that when a defendant's destruction of evidence prevents the plaintiff from presenting even a prima facie case, the defendant's conduct is so "egregious" that it is fair to place on him the entire risk of the uncertainty of harm. The majority does not allow the tort, however, in all cases where the defendant has engaged in egregious, bad faith conduct, but only in those cases where the plaintiff cannot present a prima facie case. Thus, another defendant could engage in equally egregious conduct and incur no liability whatsoever because, although he did not prevent the plaintiff from establishing a prima facie case, he did prevent the plaintiff from proving his case.

Consider the following examples. Driver A drives his new lawnmower off a cliff and incurs severe injuries. He claims that the steering became inoperable just before the crash, but the manufacturer of the lawnmower destroys the lawnmower in bad faith before trial. Because the jury reasonably could believe A's testimony that the steering malfunctioned, he has a prima facie case of product liability. See *Miller* v. *Allstate Ins. Co.*, supra, 650 So. 2d 674 (evidence that product malfunctioned during normal operation constitutes prima facie case that product was defective). Without the lawnmower, however, the jury is not convinced that it is

---

[8] Perhaps more fundamentally, if the plaintiff were able to establish that he had a cause of action that the defendant deliberately destroyed, then he presumably would be able to make a prima facie case in the underlying action and would not be eligible to bring a spoliation claim under the majority's view. Thus, the limitation of the tort to cases where the plaintiff can prove intent to destroy the underlying cause of action would appear to be self-obviating.

more likely than not that the lawnmower was defective and finds for the defendant.[9] A has *no* recourse against the manufacturer.

Driver B drives his new lawnmower off a cliff and incurs severe injuries. He does not recall what happened just before the crash and the manufacturer destroys the lawnmower in bad faith before trial. B has no prima facie case of liability and, therefore, can seek the *entire amount* of damages from the manufacturer in a spoliation action.

I simply do not understand why the majority believes that, although Driver A is not entitled to receive anything from the spoliator in spite of the fact that the defendant's bad faith destruction of the evidence severely impaired his ability to recover damages, Driver B is entitled to recover the *entire amount* of his damages, even though there is *no* evidence that his injuries were caused by a defective lawnmower. The spoliator's conduct was equally egregious in each instance. If the majority believes that the bad faith destruction of evidence requires a harsher approach to spoliators than this court's approach in *Beers*, it would make much more sense to create a mandatory rebuttable presumption that the spoliated evidence would have favored the plaintiff in all cases where the defendant destroyed the evidence in bad faith, *except* those in which the plaintiff is unable to establish even a prima facie case of causation.[10] I cannot perceive why a plaintiff who has pre-

---

[9] Under *Beers*, the jury is not required to draw an adverse inference from the intentional destruction of evidence. See *Beers* v. *Bayliner Marine Corp.*, supra, 236 Conn. 779.

[10] I see no reason to require the jury to find that the plaintiff would have *prevailed* if the defendant had not destroyed the evidence. In my view, a flexible approach, in which the jury can consider the degree of the defendant's bad faith and the importance of the spoliated evidence in determining what weight to give it, would be adequate. I note that this approach, unlike the approach adopted by the majority, might provide some relief to the plaintiff in the present case.

sented some evidence in support of each element of his underlying claim, but ultimately cannot meet his burden of proof without the destroyed evidence, should be in a worse position than a plaintiff who cannot even meet his burden of production.[11]

Finally, I would point out that we have not hesitated to require plaintiffs to prove causation in other contexts where a plaintiff's ability to establish liability and damages has been impaired by the defendant's conduct. In legal malpractice actions, the plaintiff is required to prove that "the defendant attorney's professional negligence caused injury to the plaintiff by presenting evidence of what would have happened in the underlying action had the defendant not been negligent. This traditional method of presenting the merits of the underlying action is often called the 'case-within-a-case.' " *Margolin* v. *Kleban & Samor, P.C.*, 275 Conn. 765, 775 n.9, 882 A.2d 653 (2005). We do not excuse the plaintiff from making a showing of causation merely because the attorney has made it difficult for the plaintiff to establish what would have happened in the underlying action in the absence of the malpractice, regardless of the nature and severity of the attorney's misconduct.

To the extent that the majority believes that a completely arbitrary damage award is preferable to no award at all when the defendant has engaged in bad faith spoliation, the establishment of a civil fine payable to the spoliation victim would be better left to the legislature. See *Mendillo* v. *Board of Education*, 246 Conn. 456, 486–87, 717 A.2d 1177 (1998). There simply is no precedent for allowing a jury to award damages for an

---

[11] Moreover, it is clear that the majority's new tort will create perverse incentives by encouraging plaintiffs who have weak cases to argue that they have *no* evidence to support their underlying actions. Driver A would have been better off claiming that he could not remember what happened before his accident.

injury when there is no evidence that the defendant caused the injury.

I recognize the unfairness of denying recovery to a plaintiff when, as the possible result of the defendant's wrongful conduct, he cannot establish a prima facie case. The plain fact remains, however, that the causal connection between the plaintiff's inability to recover damages and the defendant's conduct must be irreducibly speculative in such cases. I also recognize that there may be cases where the defendant will prefer the risk of sanctions, a default judgment, contempt penalties, criminal fines and even imprisonment to the risk of a civil judgment against him. This proves only that human systems of justice will not be perfect until human behavior is perfect. I would conclude that, in our imperfect world, the well-defined costs of allowing claims for first party intentional spoliation of evidence outweigh the speculative benefits. Accordingly, I dissent.

---

\* The listing of justices reflects their seniority status on this court as of the date of argument.